COLEMAN, Appellee,

v.

FISHHEAD RECORDS, INC. et al., Appellants.

[Cite as *Coleman v. Fishhead Records, Inc.* (2001), 143 Ohio App.3d 537.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77858.

Decided May 21, 2001.

*Thomas A. McCormack,* for appellee.

*Charles H. Manning,* for appellants.

---

KENNETH A. ROCCO, Judge.

This case is before the court on appeal from a trial court order finding that plaintiff-appellee, Wallace Coleman, was entitled (a) to rescind his Exclusive Recording Artist Agreement with defendant-appellant Fishhead Records, Inc., (b)

to withhold future performance, and (c) to recover royalties of $1,044.86 from Fishhead and its president, defendant-appellant Randy Chase. Appellants argue:

"I. The trial court erred as a matter of law by granting contract rescission and damages where it found that the dissolution of the joint venture between Fishhead Records, Inc. and Wilbert's Blues was a material breach excusing future performance and defendant's failure to provide a timely accounting was a material breach entitling plaintiff to rescind the contract between plaintiff Wallace Coleman and defendant Fishhead Records, since defendants had substantially performed a divisible contract and were entitled to cure their failure to provide an accounting which defendants did provide in accordance with the terms of the contract.

"II. The trial court erred in its calculation of royalties by limiting the recoupable advances made by defendant Fishhead under paragraph 6 of the agreement to $6,000 when defendant expended in excess of $11,000.

"III. The trial court erred in [sic] as a matter of law in holding defendant Randy Chase liable for damages since defendant Chase was not a party to the contract and only served as an officer of defendant Fishhead Records, Inc. and no evidence was put forward to pierce the corporate veil and hold defendant Chase personally liable."

We hold that the trial court erred by finding that Fishhead breached the agreement and by awarding royalties to Coleman. Therefore, we reverse the judgment in favor of Coleman and remand for the trial court to consider Fishhead's counterclaim.

## PROCEDURAL AND FACTUAL HISTORY

Coleman filed his complaint on March 2, 1999, seeking a determination that Fishhead and Chase misappropriated and converted his musical recordings. Coleman demanded an accounting of the proceeds from the sale of the recordings, as well as damages for the conversion. Coleman also sought a declaration that he had no continuing obligation to Fishhead under a recording agreement and had the sole and exclusive right to produce and market his own recordings. Coleman claimed that he had negotiated with a joint venture comprised of Fishhead and Wilbert's Blues for the production of an audio recording, but the joint venture dissolved before the parties reached any agreement.

Defendants' answer asserted that Coleman and Fishhead entered into an Exclusive Recording Artist Agreement on September 10, 1996. Defendants denied the allegations of the complaint and counterclaimed to recoup expenses that they claimed were advances against royalties under the terms of the

recording agreement. In addition, Fishhead sought damages for breach of the recording agreement by Coleman.

On November 30, 1999, Fishhead and Chase filed a "Brief in Action for Declaratory Judgment," to which Coleman responded on January 6, 2000. On March 16, 2000, the trial court entered its judgment and opinion.

The court found that Coleman had orally agreed to record a compact disc for a joint venture comprised of Fishhead and Michael Miller, doing business as Wilbert's Blues Records. A joint checking account was established. The two entities jointly paid for the recording of Coleman's performances and for releases from other musicians on the recordings.

Although Fishhead and Wilbert's Blues had not entered into a written joint venture agreement, in August 1996, Chase asked Coleman to execute a recording agreement with Fishhead so that release of Coleman's compact disc would not be delayed. Chase told Coleman that Chase would take care of the arrangements between Fishhead and Wilbert's Blues.

Coleman executed the agreement with Fishhead on September 10, 1996. Chase had advised Coleman to obtain an attorney if he did not feel comfortable signing the agreement that Chase supplied to him. Coleman did not sign immediately but took the contract with him, returning it signed without change.

The Exclusive Recording Artist Agreement that Coleman executed provided that Coleman would make master recordings for one album, with options for Fishhead to extend the agreement for up to two additional albums. The agreement provided that Fishhead would pay all approved recording costs, but such costs (as well as fifty percent of the expenses of marketing and promotion) constituted advances, *i.e.*, amounts Fishhead could recoup from royalties.

Fishhead was required to compute royalties payable as of June 30 and December 31 of each year, rendering a statement and paying the royalties due (less unrecouped advances and other offsets) by the succeeding September 30 or March 31.

After the recording agreement was signed, the compact disc was made and released under the Wilbert's Blues/Fishhead label. Fishhead promoted the disc and Coleman, himself, and distributed the disc. All expenses of recording, production, release, and promotion were paid by the joint venture.

In August 1997, Fishhead exercised its option under the agreement with Coleman for a second recording. Two months later, in October 1997, Wilbert's Blues and Fishhead agreed to terminate their joint venture, and Fishhead agreed to purchase Miller's interest in plaintiff's discs.

In January 1998, blues recording artist Ronnie Earl agreed to play on Coleman's second recording, and his recording company granted permission for him to do so. However, in February 1998, Coleman and his manager informed Chase and others that Coleman would not perform for the second recording.

The court found that the defendants materially breached the recording artist agreement in two respects, first by disbanding the joint venture with Wilbert's Blues and second by failing to provide Coleman with an accounting of royalties. Due to these "material and substantial" breaches, the court found that Coleman "was entitled to rescind the Agreement and withhold further performance." Further, the court found that "Coleman has no continuing legal obligation under the terms of the Exclusive Artist Recording Agreement [*sic*], and Plaintiff is now possessed with the sole and exclusive right to produce and market his professional recordings." The court calculated that Coleman was entitled to royalties of $1,044.86.

## LAW AND ANALYSIS

### I. Breach of Agreement

In their first assignment of error, Fishhead and Chase contend that the court erred by finding that (1) Fishhead materially breached the agreement by failing to provide an accounting of royalties on the dates set forth in the agreement, and (2) the dissolution of the joint venture constituted a material breach.[1] We agree.

The trial court found that there was a written contract between Fishhead and Coleman.[2] Construction of the unambiguous terms of a written contract is a matter of law. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. Accordingly, we review the court's construction of the contract's requirements *de novo*.

### A. Failure to Provide Royalty Accountings.

Fishhead does not dispute the court's findings that the recording agreement required Fishhead to provide Coleman with an accounting of royalties at six-month intervals and that Fishhead did not provide Coleman with an accounting of royalties as required. Rather, Fishhead argues that in finding that the

---

**1.** Fishhead and Chase also contend that the court erred by finding that the joint venture was a condition precedent to the recording contract. A careful reading of the trial court's opinion reveals that the court made no such finding; it recited only that Coleman *argued* that the joint venture was a condition precedent to the contract.

**2.** We note that the court's finding of a contract between Coleman and Fishhead resolves Coleman's claim that Fishhead and Chase misappropriated or converted Coleman's property. Therefore, Fishhead and Chase are entitled to judgment as a matter of law on that claim.

failure to provide an accounting was a material breach, the court did not consider paragraph 18 of the contract, which provides:

"The failure by Company to perform any of its obligations hereunder shall not be deemed a breach of this Agreement unless you give Company written notice of such failure to perform and such failure is not corrected within sixty (60) days from and after Company's receipt of such notice * * *."

We agree with Fishhead that, pursuant to the plain and unambiguous terms of paragraph 18, its failure to account for royalties was not a breach of the agreement unless Coleman provided written notice to Fishhead and Fishhead did not provide an accounting to Coleman within sixty days after it received the notice.

In an affidavit attached to Fishhead's brief to the trial court, Chase averred that the first written notice he received was the complaint here. An accounting was provided to plaintiff on May 19, 1999, within sixty days after Fishhead was served with the complaint. As a matter of law, Fishhead's prior failure to provide accountings was not a breach under the terms of the agreement.

## B. Dissolution of Joint Venture

Fishhead also challenges the trial court's finding that the dissolution of the joint venture was a material breach of the agreement, asserting that the parol evidence rule precludes the court from considering evidence of addition of terms not contained in the integrated written agreement. In response, Coleman argues that the joint venture was a condition precedent to the recording agreement. He claims that no written joint venture agreement was signed, so the condition precedent was never satisfied, and the recording agreement was never effective.

Fishhead argues that the trial court erred by finding that a joint venture agreement between Fishhead and Wilbert's Blues was a condition precedent to the recording agreement between Fishhead and Coleman. The trial court made no such finding.[3] Even if a joint venture agreement had been a condition precedent to the recording contract, the trial court found that the joint venture was formed—and later dissolved. Thus, the condition was satisfied.

Nothing in the recording agreement itself required that the joint venture be formed or continue. Furthermore, the agreement expressly stated that it "contain[ed] the entire understanding of the parties hereto relating to the subject matter hereof and cannot be changed or terminated except by an instrument signed by the party to be bound." The parol evidence rule precludes

---

3. Its award of royalties in accordance with the terms of the contract is inconsistent with the proposition that a contract was never formed.

the addition of antecedent oral agreements to an integrated written contract. See, *e.g.*, *Ed Schory & Sons, Inc. v. Francis* (1996), 75 Ohio St.3d 433, 440–441, 662 N.E.2d 1074, 1080–1081. Therefore, we will not consider extrinsic evidence of an additional oral term of the recording contract.[4]

For these reasons, we agree with appellant that there was no breach of the recording agreement. Accordingly, we reverse the court's determination that Coleman had the right to rescind the recording agreement and withhold future performance.

In light of its holding that Coleman could withhold future performance of the recording agreement, the court never reached Fishhead's claim that Coleman breached the agreement. Therefore, we must remand for further consideration of that claim.

## II. Royalties

█ Fishhead's second assignment of error contends that the court erred by finding that there were royalties due to Coleman pursuant to the agreement. It claims that the court limited its recoupable advances to $6,000 through a misconstruction of the agreement with respect to the advances for the first album.

The court did not limit Fishhead's recoupable advances to $6,000; rather, the court determined that Fishhead had agreed to bear up to $6,000 in expenses without recoupment. It deducted only the excess from adjusted gross earnings to arrive at the net earnings on which royalties were calculated.

The court based its decision on paragraph 6(c) of the recording agreement. Paragraph 6 provides:

"6. <u>Advances</u>

"(a) All monies paid and expenditures made by Company pursuant to or in connection with this Agreement (other than royalties paid pursuant to Paragraph 8 hereof) including Recording Costs and fifty (50%) percent of any monies expended by Company in connection with independent marketing or promotion of Records hereunder, shall constitute Advances * * * unless otherwise expressly agreed in writing by an authorized officer of Company.

---

**4.** We note that the parol evidence rule would not preclude the introduction of extrinsic evidence of a condition precedent to a contract. Such a condition would not alter the terms of the agreement but would merely determine whether the agreement became effective. *Carter v. New Buckeye Redev. Corp.* (Apr. 2, 1998), Cuyahoga App. No. 72501, unreported, 1998 WL 158855. However, as discussed above, if the formation of a joint venture were a condition precedent, that condition was satisfied.

"(b) (i) Promptly after your Delivery to Company of the Masters constituting an Album in fulfillment of your Recording Commitment, Company will pay directly to you, with exception of the first Album, as an Advance the remainder of the 'Recording Fund' * * *.

"(ii) The Recording Fund for each Album specified above shall be an amount equal to ten percent (10%) of the 'Net Income' * * * earned by Company * * * from 'USNRC Net Sales' * * * of the immediately preceding Album * * *.

"(c) Each Advance, where applicable, shall be paid according to the following schedule:

"(i) For each Album other than the First Album,

"(A) Ten (10%) percent of the applicable Recording Fund, promptly after Company has approved all relevant preconditions to recording (e.g., budget, Compositions, Producer, etc.) and the recording of such Album has commenced; and

"(B) The balance promptly after Delivery of the Album concerned.

"(ii) For the First Album it is explicitly agreed and understood that Company shall cover all costs not to exceed five thousand ($6,000) [sic] dollars."

Reading paragraph 6 as a whole, subsection (c)(ii) plainly and unambiguously limits to $5,000 (or $6,000) the expenses which Fishhead agreed to pay as advances. It does not mean that Fishhead agreed to pay $5,000 or $6,000 of expenses without reimbursement.

Though Fishhead had limited its liability for expenses to $5,000 or $6,000, the contract does not preclude Fishhead from recouping from royalties any expenses that it paid in excess of that amount. Paragraph 6(a) clearly provides that all expenditures that Fishhead made in connection with the recording agreement were advances. There is no indication in the contract that the $5,000 or $6,000 limit was intended to prevent reimbursement if Fishhead actually paid a larger amount.

According to the calculations set forth in the court's order, Fishhead expended some $12,084.07. Gross earnings were $10,278.13, and administrative expenses were $1,027.81. Thus, there was no net income upon which royalties were due, and the court erred by awarding royalties to Coleman. Therefore, we sustain the second assignment of error.

This conclusion moots the third assignment of error, which complains about the court's award against Chase. However, we note that Coleman agreed that Chase was not liable for royalties.

Accordingly, we reverse the judgment and remand the cause for further consideration of Fishhead's counterclaim.

*Judgment reversed*
*and cause remanded.*

KARPINSKI, A.J., and BLACKMON, J., concur.