OPINION
{¶ 1} Jack Giles and Joan Donnelly appeal from the trial court's decision and entry finding them in breach of a real estate contract and awarding damages to appellees Robert and Angela Hiatt. In a cross appeal, the Hiatts challenge the amount of the trial court's damages award and its failure to award prejudgment interest.
 {¶ 2} The present appeal stems from an attempt by Giles and Donnelly ("Buyers") to purchase a home owned by the Hiatts ("Sellers"). The Buyers and Sellers negotiated a purchase price of $225,000 and signed a contract in August, 2003. The contract included a contingency clause providing for the Buyers to obtain one-hundred percent financing because they had no money for a down payment. The contract also provided that if the property failed to appraise for $225,000, the price would be renegotiated or the Buyers would be allowed out of the contract.
 {¶ 3} The Buyers subsequently received written notice from a mortgage broker, All Credit Mortgage Bancorp, Inc., informing them that they had been approved for one-hundred percent financing subject to certain verifications. In reliance on this notice, the Sellers moved out of their home and into a rented duplex.[1] The lender then failed to obtain an acceptable appraisal, however, and refused to loan the Buyers $225,000 to purchase the home. Instead, All Credit Mortgage informed the Buyers that the lender would make only a $200,000 loan.
 {¶ 4} In an effort to consummate the sale, the parties entered into a new agreement on October 29, 2003. That second agreement established a purchase price of $200,000 and contained the following terms:
 {¶ 5} "1. The OWNERS hereby agree to sell to the PURCHASERS the property aforesaid * * *.
 {¶ 6} "2. The PURCHASERS agree to buy the property `AS IS.'
 {¶ 7} "3. The PURCHASERS shall pay $100.00 payable to the owners for down payment on the property at the time of the signing of the REAL ESTATE PURCHASE AGREEMENT.
 {¶ 8} "4. The PURCHASERS shall obtain financing in the amount of $199,900.00 to be paid to the OWNERS on the date of closing.
 {¶ 9} * * *
 {¶ 10} "7. When the OWNER accepts this offer, it shall constitute a contract for the PURCHASE and sale of said property as herein provided.
 {¶ 11} * * *
 {¶ 12} "9. If prior to closing, the PURCHASERS default in the performance of any of the obligations of the terms hereof, the OWNERS may at their option treat this contract as null and void. If the OWNERS do not perform their obligations under this contract within said time, the PURCHASER[S] may at their option treat this contract as null and void.
 {¶ 13} * * *
 {¶ 14} "11. All parties hereby acknowledge receipt of a full and complete copy of this Agreement and declare that no promises, representations and agreements, other than those herein contained have been made or relied upon."
 {¶ 15} On the same day that the parties executed the foregoing agreement, the Buyers also gave the Sellers a cognovit note for $14,000. The end result was a total purchase price of $214,000 — with the Buyers obtaining bank financing for $200,000 and the Sellers carrying a note for $14,000. The lender once again refused to make the loan, however, and the Buyers were unable to purchase the property. Although the trial court found the record not entirely clear, the lender appears to have balked at providing one-hundred percent financing upon discovering that the home was in a rural area. In any event, the Sellers sold their home to another party for $200,000 several months later.
 {¶ 16} The Sellers commenced the present action on May 20, 2004. In their complaint, they alleged that the Buyers had breached the second purchase agreement and that the breach had caused them to incur out-of-pocket expenses totaling $21,256.80. In a related action, the Sellers filed a complaint for breach of the cognovit note. After initially entering judgment in favor of the Sellers on the cognovit note, the trial court granted the Buyers relief under Civ.R. 60(B) and set both actions for a bench trial.
 {¶ 17} The central issue at trial was whether the Buyers' obligation to purchase the Sellers' home was contingent on their ability to obtain financing. The Buyers argued that their ability to secure financing was a condition precedent to their obligation to purchase the home and to pay on the cognovit note. For their part, the Sellers argued that nothing in the second purchase agreement made the sale contingent on the Buyers' ability to finance the purchase. Instead, the Sellers insisted that the purchase agreement unambiguously imposed a legal duty on the Buyers to obtain a mortgage.
 {¶ 18} After hearing testimony on the issue, the trial court ruled in favor of the Sellers. In its written decision, the trial court reasoned as follows:
 {¶ 19} "[T]he Court must determine whether these agreements were contingent upon financing. In this regard, the Plaintiffs claim that the purchase contract is unambiguous and that the Court should not consider any parol evidence (i.e. oral testimony to explain the meaning and circumstances surrounding the agreements). On the other hand, the Defendants claim that parol evidence is permitted to explain the contingency of financing. In this regards [sic], the Court finds that parol evidence is permitted to explain the meaning (i.e., interpretation) of the agreements.
 {¶ 20} "From the testimony, it is clear that the parties fully expected the transaction to be completed for the sum of $214,000. After the first loan was not possible because of appraisal problems, the Defendants were assured by All Credit Mortgage that they would receive financing in the amount of $200,000. This assurance was clearly written into the second purchase agreement which unequivocally stated that `Purchasers shall obtain financing. . . .' If financing was intended to be a contingency, then such a common contingency would have been drafted into the agreement. Instead, the contract plainly states what the Court finds to be the intentions of the parties — i.e., that the financing was the duty of the Defendants. While it is equally clear that the lender failed to complete the loan, the Defendants bore the responsibility to obtain financing. Also, this conclusion is supported by the dates of signing and performance, since the closing was required to be within 14 days after signing — surely too little time to clear any contingency of financing. If a financing contingency was expected, the parties would not have included such a short amount of time to clear the contingency and close the transaction."
 {¶ 21} After finding that the Buyers had breached the second purchase agreement, the trial court turned to the issue of damages. It held that the Sellers were entitled to $14,000, which represented the difference between what the Buyers had contracted to pay ($214,000) and what the home later sold for ($200,000). The trial court refused, however, to compensate the Sellers for expenses they incurred when they moved out of their home and into a duplex in anticipation of closing the sale with the Buyers. The trial court reasoned that "the Plaintiffs' decision to move into an apartment prior to the closing was a risk that they assumed; their storage costs, duplicate electric expenses, mortgage related expenses, mileage expenses and other expenses are not chargeable against the Defendants." But the trial court did award the Sellers an additional $135, which represented certain "damages related directly to the breach of contract[.]" Thus, the trial court entered judgment in favor of the Sellers for $14,135.
 {¶ 22} In their sole assignment of error, the Buyers contend the weight of the evidence does not support the trial court's finding of no financing contingency in the second purchase agreement. Their argument focuses on paragraph number four of the agreement, which states: "The PURCHASERS shall obtain financing in the amount of $199,900.00 to be paid to the OWNERS on the date of closing." The Buyers argue that this provision constitutes an express, written condition precedent to their obligation to purchase the home. Alternatively, the Buyers contend that paragraph number four is ambiguous as to whether financing was a condition precedent to their obligation to purchase the home. They then argue that the ambiguity should be construed against the Sellers, who were responsible for drafting the agreement. The Buyers also claim the parties had reached an oral agreement that the purchase would be contingent on their ability to obtain financing. In support, they cite testimony indicating the Sellers' awareness that they needed one-hundred percent financing and had no money of their own. Finally, the Buyers assert that the contract-law doctrine of impossibility of performance should excuse their non-performance under the purchase agreement.
 {¶ 23} Upon review, we find the foregoing arguments to be unpersuasive. As an initial matter, we reject the Buyers' argument that paragraph number four of the purchase agreement expressly made their ability to obtain financing a condition precedent to their purchase obligation. "`A condition precedent is a condition which must be performed before the obligations in the contract become effective.'" Rudd v. Online Resources, Inc.
(June 18, 1999), Montgomery App. No. 17500, quoting Troha v.Troha (1995), 105 Ohio App.3d 327, 334. "Thus, if a condition precedent is not fulfilled, a party is excused from performing the duty promised under the contract. Whether a provision is a condition precedent or merely a promise to perform is a question of the parties' intent. Intent may be ascertained by considering the language of a particular provision, the language of an entire agreement, or the subject matter of an agreement. Conditions precedent are not favored by the law, and whenever possible courts will avoid construing provisions to be such unless the intent of the agreement is plainly to the contrary." Id. (citations omitted).
 {¶ 24} In the present case, the parties' second purchase agreement does not contain a condition precedent regarding financing. The agreement unambiguously obligated the Buyers to obtain financing, but nowhere did it condition the sale on their doing so. In other words, we read paragraph number four as plainly setting forth an unconditional promise by the Buyers to perform — i.e., a promise to obtain financing. If the parties had intended to structure the transaction to make the sale contingent on the Buyers' ability to secure financing, they easily could have used language to that effect, as they did in the first agreement.
 {¶ 25} In opposition to the foregoing conclusion, the Buyers rely largely on Clements v. Huff (Jan. 29, 1976), Franklin App. No. 75AP-433. In that case, Martha Clements entered into a contract to sell her home to Ronald Huff. The contract included language stating that the purchase price was "[t]o be financed with a conventional mortgage at accredited lending institution." Huff backed out of the deal after the lender refused to give him a loan because his wife would not sign the loan documents. Clements then brought suit for damages. The trial court entered judgment for Huff, finding that the financing clause "indicated plainly to plaintiff-seller that defendant buyer had no money of his own with which to complete the transaction; that he would have to have a loan; and so, clearly implied a condition precedent to the consummation of the sale." Upon review, the Tenth District affirmed, holding that the trial court reasonably interpreted the financing clause as a condition precedent to enforceability of the contract.
 {¶ 26} We find Clements to be unpersuasive for at least two reasons. First, the financing language in that case was more ambiguous than the language at issue here. In Clements, the agreement included terms simply stating that the sale was "to be financed with a conditional mortgage." On its face, this language might be read as setting forth a mutually agreed condition precedent. In the present case, however, the language at issue expressly imposed a duty on the Buyers. In a portion of the agreement identifying the obligations of the parties, it stated: "The PURCHASERS shall obtain financing in the amount of $199,900.00 to be paid to the OWNERS on the date of closing." In our view, this different language distinguishes the present case from Clements.
 {¶ 27} Second, even if Clements were not distinguishable, we would decline to follow it. In finding the existence of a condition precedent, the trial court in Clements relied in part on the seller's knowledge that the buyer needed financing and lacked funds of his own. In our view, however, a seller's awareness that a buyer needs financing has little bearing on whether a financing provision in a contract is intended as a condition precedent to the transaction or a covenant on the part of the buyer to obtain the necessary financing. As the Sellers correctly point out, their mere knowledge that the Buyers needed to finance the purchase price is not tantamount to an agreement by them to make the deal contingent on the Buyers ability to secure a loan. To the contrary, the Sellers' knowledge that the Buyers needed financing could just as easily explain why they drafted a purchase agreement that imposed a contractual duty on the Sellers to obtain one.
 {¶ 28} In our view, the present case is more analogous toOtto v. Ickes (April 29, 1998), Tuscarawas App. No. 97 AP 070047. There Ronald Otto agreed to sell his home to Brian and Nancy Ickes for $44,000. The purchase agreement stated that the Ickes would finance $39,600 of the sale price but did not make the availability of financing a condition precedent to the Ickes' performance. In that case, financing was not made a contingency because the Ickes had indicated to Otto that they did not anticipate any problems with financing. Likewise, in the present case, we find nothing in the parties' purchase agreement making the Buyers' performance contingent on their ability to obtain financing. As in Otto, the absence of such a provision may be explained by the fact that the Buyers already had been approved for a $200,000 mortgage and, thus, likely did not anticipate the need for a financing contingency in the purchase agreement.
 {¶ 29} In any event, having reviewed paragraph number four of the parties' second purchase agreement, we concur in the trial court's conclusion that it does not make the availability of financing a condition precedent. Rather, it unambiguously obligated the Buyers to obtain financing without making the transaction contingent on their success in doing so.[2]
"Where a written instrument is unambiguous, a court must give effect to the expressed intentions of the parties." OlympicTitle Ins. Co. v. Fifth Third Bank, Montgomery App. Nos. 19324, 19319, 2002-Ohio-5826. As a result, the trial court properly found the Buyers to be in breach of the purchase agreement through their failure to obtain the necessary financing.
 {¶ 30} Having determined that paragraph number four was not ambiguous, we turn next to the Buyers' claim regarding the existence of an oral agreement that the purchase contract was contingent on their ability to obtain financing. In support, they cite the Sellers' awareness that they needed one-hundred percent financing and had no money of their own. The Buyers also argue that they may rely on parol evidence to establish the existence of an oral agreement making the availability of financing a condition precedent to their purchase obligation.
 {¶ 31} Upon review, we are unpersuaded by the Buyers' argument regarding the existence of an oral agreement making financing a condition precedent. We do not dispute that parol evidence at times may be used to prove an oral agreement establishing a condition precedent to a written contract. "While parol evidence is inadmissible to vary the unambiguous terms of a written contract, it is admissible to establish a condition precedent to the existence of a contract." Riggs v. The StandardSlag Co. (Nov. 10, 1993), Summit App. No. 16199; Coleman v.Fishhead Records, Inc. (2001), 143 Ohio App.3d 537, 543 n. 4 ("[T]he parol evidence rule would not preclude the introduction of extrinsic evidence of a condition precedent to a contract. Such a condition would not alter the terms of the agreement but would merely determine whether the agreement became effective.").
 {¶ 32} In the present case, however, the Buyers' argument about an oral condition precedent fails for two reasons. First, "[e]ven a condition precedent may not be shown by parol evidence when the condition is inconsistent with the express terms of the writing. When the subject matter of a condition precedent is dealt with in the written instrument, in any form, the condition may not be shown by parol evidence to be different from the manner in which it is expressed in the writing." Villa RealtyCo., Inc. v. Allied Investment Credit Co. (July 14, 1977), Cuyahoga App. No. 35585. As set forth above, paragraph number four of the purchase agreement unambiguously imposes on the Buyers a contractual duty to obtain financing. Because the purchase agreement speaks to the issue of financing and imposes a duty on the Buyers to obtain the same, any evidence of an oral agreement making the contract contingent on the Buyers' ability to obtain financing would contradict paragraph number four. As a result, reliance on parol evidence is inappropriate in this case.
 {¶ 33} Second, the record simply does not support the Buyers' claim that the parties had an oral agreement making the sale contingent on their ability to obtain financing. At most, the record establishes the Sellers' awareness that the Buyers needed financing and had no money of their own. As we explained above, however, it does not follow that the Sellers necessarily agreed to make the sale contingent on the Buyers' success in obtaining financing. Armed with the knowledge that the Buyers needed a mortgage, the parties could have structured the purchase agreement in one of two ways. They could have made the deal contingent on the Buyers' ability to obtain financing, or they could have made securing financing a legal duty that the Buyers bore the risk of not performing. The language of paragraph number four sets forth an unambiguous promise on the Buyers' part to obtain the financing. Thus, the parties proceeded under the second approach. Contrary to the Buyers' argument on appeal, we see no evidence of an oral agreement making the transaction contingent on their success in obtaining a mortgage.
 {¶ 34} In a final argument, the Buyers assert that the contract-law doctrine of impossibility of performance should excuse their non-performance under the purchase agreement. "Impossibility of performance is an affirmative defense to a breach of contract claim. Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties." Skilton v. Perry Local School Dist. Bd. ofEduc. Lake App. No. 2001-L-140, 2002-Ohio-6702, at ¶ 26, aff'd102 Ohio St.3d 173, 2004-Ohio-2239. We note, however, that the Buyers neither pled the issue of impossibility as an affirmative defense nor raised it at trial. Therefore, the issue has been waived.
 {¶ 35} Even if the issue were not waived, however, we would reject application of the impossibility doctrine here. "Although impossibility may conceivably arise in a variety of contexts, the inability to pay money or to render performance as a result of insolvency or some other financial difficulty has been held in certain circumstances not to constitute an excuse in law under the theory that a party generally assumes the risk of financial ability to perform when entering into any contract." Wittrock v.Paragon Paper Co. (Dec. 18, 1985), Hamilton App. No. C-840883, citing Calamari and Perillo, The Law of Contracts (1970), 315, Section 197; see also Specialty Tires of America, Inc. v. CITGroup/Equipment Financing, Inc. (W.D. Pa. 2002),82 F.Supp.2d 434, 439 (recognizing that a contracting party assumes the risk of the inability to pay money and that the doctrine of impossibility does not apply when a duty to pay is breached);Christy v. Pilkinton (1954), 224 Ark. 407, 273 S.W.2d 533
("There is a familiar distinction between objective impossibility, which amounts to saying, `The thing cannot be done,' and subjective impossibility — `I cannot do it.' Rest., Contracts, § 455; Williston on Contracts, § 1932. The latter, which is well illustrated by a promisor's financial inability to pay, does not discharge the contractual duty[.]").
 {¶ 36} Based on the reasoning set forth above, we conclude that the weight of the evidence supports the trial court's finding of no financing contingency in the parties' second purchase agreement. We also find no merit in the Buyers' impossibility argument. Accordingly, we overrule the Buyers' assignment of error.
 {¶ 37} We turn now to the Sellers' cross appeal in which they challenge the trial court's damages award. In their first assignment of error, the Sellers contend the trial court erred by failing to award damages for "additional utility charges incurred, additional maintenance charges incurred, additional rental and storage charges incurred, additional interest charges incurred, additional real estate taxes incurred, and additional insurance charges incurred" as a result of the Buyers' breach of the purchase agreement.
 {¶ 38} In support of their argument, the Sellers rely onCallahan v. Richardson (April 4, 1979), Hamilton App. No. C-780119, and Kinnison v. Harnish (May 1, 1980), Montgomery App. No. CA 6564. In Callahan, the parties entered into a real estate contract for the sale of a home. After the contract was signed but before the closing, the sellers moved into an apartment. Thereafter, the buyers reneged on the purchase and the sellers sued for breach of contract. The trial court awarded the sellers damages for, inter alia, insurance and utilities paid while the home remained vacant prior to its eventual sale to a different purchaser. The First District affirmed, reasoning: "At the time of the breach, sellers, in reliance on the contract, had already altered their position by entering into a lease and moving into an apartment. The additional insurance and utility expense was a natural result of the house being vacated. The parties could hardly have anticipated that such expenses would not follow the breach."
 {¶ 39} Our decision in Kinnison also involved a contract to purchase a home. There the contract included language making it contingent on the buyers selling their own home and obtaining financing. After entering into the contract, the buyers proceeded to sell their home, move into an apartment, and spend money to obtain a mortgage. The seller then failed to perform under the contract, and no closing occurred. Upon review, we affirmed the trial court's decision to award the buyers damages to compensate them for their moving and storage expenses, as well as their expenses in obtaining a loan. Because the parties' contract specifically contemplated the buyers moving and securing financing, we held that the seller reasonably should have expected to bear responsibility for these expenses upon the breach.
 {¶ 40} In our view, the present case is distinguishable fromCallahan and Kinnison. In both of those cases, the non-breaching party moved in reliance on the real estate contract after it had been signed and before the breach had occurred. In the present case, however, the Sellers moved prior to the second purchase agreement even being signed. As noted above, the parties entered into an initial agreement to sell the home for $225,000. In anticipation of that deal closing, the Sellers moved into a duplex. The transaction subsequently failed to close, however, apparently because the lender was dissatisfied with its appraisal. The Sellers did not file suit for breach of this first purchase agreement. Instead, the parties entered into a second purchase agreement to sell the home for $200,000. When this agreement was signed, the Sellers already had moved into the duplex and placed some of their possessions in storage. As a result, we can only conclude that the Buyers' breach of the second agreement did not cause the Sellers to incur their rental and storage charges.
 {¶ 41} In addition, this court more recently has held that a seller is not entitled to damages to compensate for additional property taxes, interest, utilities, and home maintenance expenses following a buyer's breach of a real estate contract.Hussey v. Daum (May 3, 1996), Montgomery App. No. 15434;Kauder v. Thompson (May 9, 1986), Montgomery App. No. 9265. As we explained in Kauder, the argument "that after the breach and an award of the difference in value [between the contract price and the eventual sale price], the vendor is as a matter of law also entitled to recover maintenance and other expenses for his own property until such time as he is able to dispose of the property is not supported by * * * any authority * * * [and] is not the law of this state. Such future expenses are incidental to resulting ownership and not caused by the breach of contract." In other words, we have recognized that "`[t]he inconvenience and expense of managing or disposing of one's own property after a prepared sale is breached or otherwise terminated is not a proper element of special damages against the defaulting purchaser.'"Hussey, supra, quoting Kauder.
 {¶ 42} Our conclusion in Hussey and Kauder is consistent with decisions from other appellate districts. See, e.g.,Peterman v. Dimoski, Hamilton App. No. C0-20116, 2002-Ohio-7337, at ¶ 11 ("Turning to the cost of utilities, real estate taxes, and homeowners' association dues for the period until the home was sold, we consider such expenses generally incidental to the Petermans' continued ownership and management of the property. Accordingly, we do not consider such expenses normally recoverable as a proper element of additional special damages."); Roesch v. Bray (1988), 46 Ohio App.3d 49, 51 ("[W]e conclude that these expenses [for maintenance, utilities, and resale] are incidental to ownership. Although appellees might have been able to foresee that certain expenses would be incurred in maintaining the property until future resale, the duration and extent of those expenses could only be speculated upon. Were we to hold otherwise, a breaching party could be subjected to liability for similar expenses for months or even years on end.").
 {¶ 43} In light of the foregoing authorities, we find no error in the trial court's refusal to award the Sellers damages for the additional expenses set forth in their appellate brief. Accordingly, we overrule their first assignment of error.
 {¶ 44} In their second assignment of error on cross appeal, the Sellers contend the trial court erred in failing to award them prejudgment interest. We disagree. Although the Sellers did not specifically request prejudgment interest in their breach-of-contract complaint or in their complaint alleging a breach of the cognovit note, Civ.R. 54(C) provides that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded the relief in the pleadings." Therefore, the Sellers' failure to raise the issue of prejudgment interest in their complaints did not foreclose a claim for the same.
 {¶ 45} Nevertheless, the Sellers' failure ever to bring the issue of prejudgment interest to the trial court's attention is
fatal to their argument that the trial court erred in not awarding it. An appellate court ordinarily will not consider an error that could have been brought to the trial court's attention when the error could have been avoided or corrected. Brown v.Good Samaritan Hosp. and Health Care Center (March 21, 1997), Montgomery App. No. 15959. Given their failure to bring the prejudgment interest issue to the trial court's attention, the Sellers have waived any error in the trial court's failure to award it. Accordingly, we overrule their second assignment of error and affirm the judgment of the Darke County Common Pleas Court.
 {¶ 46} Judgment affirmed.
. . . . . . . . . . .
YOUNG, J., concurs.
[1] In its decision and entry, the trial court suggests that the Sellers moved out of their home later after a second purchase agreement was signed. The Sellers' own trial testimony clearly establishes, however, that they moved into a duplex in anticipation of closing on the first contract. (Trial transcript at 10, 18 and Plaintiff's Exhibit 9, pg. 2).
[2] In their appellate brief, the Buyers characterize this conclusion as "counterintuitive." They reason that a buyer (as opposed to the seller) always has the obligation to obtain financing. Thus, according to the Buyers, the only logical reason to include paragraph number four was to make the availability of financing a condition precedent. We disagree. Although a buyer always has the obligation to obtain financing for a home purchase, the significance of paragraph number four is that it made this obligation a contractual duty, the breach of which would support a claim for damages. In this way, paragraph number four served to distinguish the second purchase agreement from the first one, which made financing a contingency.