[Cite as *Jenkins v. State Farm Fire & Cas. Co.*, 2012-Ohio-6076.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                         |   |                      |
|-------------------------|---|----------------------|
|                         | : | JUDGES:              |
| THOMAS JENKINS          | : | W. Scott Gwin, P.J.  |
|                         | : | John W. Wise, J.     |
| Plaintiff-Appellant     | : | Julie A. Edwards, J. |
|                         | : |                      |
| -vs-                    | : | Case No. 12-CA-5     |
|                         | : |                      |
|                         | : |                      |
| STATE FARM FIRE AND CASUALTY | : | O P I N I O N   |
| COMPANY                 |   |                      |
|                         |   |                      |
| Defendant-Appellee      |   |                      |

CHARACTER OF PROCEEDING: Civil Appeal from Perry County
Court of Common Pleas Case No.
10 CV 00141

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: December 20, 2012

APPEARANCES:

For Plaintiff-Appellant

EDWIN J. HOLLERN
Hollern & Associates
77 North State Street
Westerville, Ohio 43081

For Defendant-Appellee

M. JASON FOUNDS
Andrew J. Kielkopf
Gallagher, Gams, Pryor,
Tallan & Littrell, LLP
471 E. Broad Street, 19th Floor
Columbus, Ohio 43215

*Edwards, J.*

{¶1} Plaintiff-appellant, Thomas Jenkins, appeals from the December 2, 2011, Entry from the Perry County Court of Common Pleas granting the Motion for Partial Summary Judgment filed by defendant-appellee State Farm Fire and Casualty Company.

<u>STATEMENT OF THE FACTS AND CASE</u>

{¶2} On February 17, 2004, a fire destroyed a residence under construction that was being built for appellant. The shell and roof of the building were complete. The residence was insured by appellee State Farm Fire and Casualty Company. At the time of the fire, the policy issued by appellee to appellant states, in relevant part, as follows:

{¶3} "**COVERAGE A – DWELLING**:

{¶4} "**1. A1 – Replacement Cost Loss Settlement – Similar Construction**.

{¶5} "a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

{¶6} "(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability show in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

{¶7} "(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the

damaged part of the property, or an amount up to the applicable limit of liability show in the **Declarations**, whichever is less;

{¶8} "(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and…"

{¶9} The limits of liability for the fire loss to the dwelling was $340,000.00.

{¶10} On or about March 12, 2004, appellant submitted a Sworn Proof of Loss presenting a claim for $225,251.63 for the damaged building. After obtaining estimates, appellee determined that the total loss to the residence was $122,879.45 and, on or about December 21, 2004, issued a check in such amount payable to Peoples National Bank, the mortgage holder, appellant and his attorney.   Appellant's counsel, pursuant to a letter to appellee dated January 21, 2005, indicated that appellant disputed the amount and wished to take advantage of the appraisal process provided for in appellant's policy with appellee. The appraisal process determined that the replacement cost value and actual cash value of the residence at the time of the fire was $186,362.00.  The appraisal award was issued on November 9, 2005.

{¶11} On or about November 17, 2005, appellee paid appellant and his mortgage holder an additional $63,482.55, representing the difference between $186,362.00 and the $122,879.45 already paid. Subsequently, on or about November 2, 2007, appellee issued a third check to appellant, his attorney and the mortgage holder

in the amount of $28,073.50. In all, appellant had received checks totaling $214,435.50 from appellee.[1]

**{¶12}** On March 30, 2010, appellant filed a complaint[2] for breach of contract against appellee, alleging that appellee had breached the insurance policy issued to appellant by failing and refusing to pay the full value of the claim after appellant satisfied all terms and/or conditions precedent to the policy. Appellant alleged that appellee failed to timely and completely pay his claim in breach of the terms of the insurance policy. Appellant, in his complaint, sought compensatory damages, attorney fees, prejudgment interest, costs and expenses. In a September 17, 2010 pretrial statement, appellant alleged that he was entitled to the following damages:

**{¶13}** "5. ITEMIZATION OF EXPENSES:

**{¶14}** "Rebuild estimate per Charter Hill $302,575;

**{¶15}** "Foundation included above;

**{¶16}** "Paid to date ($186,362);

**{¶17}** "Subtotal owed $116,213;

**{¶18}** "Demolition & miscellaneous $9,500;

**{¶19}** "Interest on construction loan $27,000;

**{¶20}** "Contractual damages to date $143,213;

**{¶21}** "Increase in mortgage payments 6% loan instead of 5% loan $62,100;

**{¶22}** "Contractual damages in future $62,100;

**{¶23}** "Total Contractual Expectation Damages $205,313."

---

[1] Of this figure, $211,833.50 was for the actual cash value of the premises on the date of the fire and $2,602.00 was payment for demolition costs.
[2] The complaint was a refiled complaint.

**{¶24}** Appellant also alleged that he was entitled to interest pursuant to R.C. 1343.03(A) in the amount of $28,393.00 plus attorney's fees in the amount of $68,438.00, for total damages in the amount of $302,144.00.

**{¶25}** Appellee subsequently filed a Motion for Partial Summary Judgment. Appellee, in its motion, asked the trial court for an order holding that appellant was only entitled to the actual cash value of the subject premises (not the replacement cost of the house) at the time of the fire on February 14, 2004, for an order holding that appellant was not entitled to recover interest on his construction loan or other financing charges paid to third parties, as damages, and for an order holding that appellant was not entitled to an award of attorney's fees. In response, appellant, on January 11, 2011, filed a memorandum in opposition and a Cross-Motion for Partial Summary Judgment on the same three issues. Appellant, in his motion, argued that he was financially unable to rebuild his house because appellee has not paid him what was due and owing under the insurance contract. Appellant further argued that he was entitled to the replacement costs of house, to recover interest on the construction loan and the contract, and was entitled to attorney's fees.

**{¶26}** Pursuant to an Entry filed on December 2, 2011, the trial court granted the Motion for Partial Summary Judgment filed by appellee. The trial court, in its Entry, held that, under the terms of appellant's policy with appellee, appellant was entitled to the actual cash value at the time of loss of the damaged property up to the limits of liability, that appellee had issued checks to appellant for what it determined to be the actual cash value and that appellant had not reconstructed the residence. The trial court further held that while appellant alleged that appellee prevented him from constructing

the residence within two years as required by the terms of the insurance policy, appellant did not produce any evidence indicating that there was an impossibility of performance or prevention of performance. The trial court also held that appellant was not entitled to recover interest payments or other financing charges paid to another party or attorney's fees.

{¶27} As memorialized in an Agreed Final Judgment Entry filed on February 27, 2012, all remaining claims relating to damage to the foundation were dismissed with prejudice.

{¶28} Appellant now raises the following assignment of error on appeal:

{¶29} "THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND OVERRULING APPELLANT'S CROSS MOTION FOR SUMMARY JUDGMENT."

{¶30} Appellant, in his sole assignment of error, argues that the trial court erred in granting summary judgment in favor of appellee.

{¶31} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212 (1987). As such, we must refer to Civ.R. 56 which provides, in pertinent part: "* * *Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it

appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor.* * *"

{¶32} Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997–Ohio–259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996–Ohio–107, 662 N.E.2d 264.

{¶33} Appellant, in the case sub judice, alleged that appellant breached the insurance contract issued to appellant by failing to timely and completely pay the claim that appellant presented to appellee.  As is stated above, appellant, on March 12, 2004, submitted a claim in the amount of $225,251.63.

{¶34} Where the policy language is clear and unambiguous, we have no authority to rewrite or otherwise construe the language the parties have adopted. *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 168, 436 N.E.2d 1347 (1982).

{¶35} As noted by the trial court, the policy issued to appellant clearly and unambiguously provided that appellee would pay the actual cash value at the time of the loss to the damaged property up to the limits of liability and that, when the repair or replacement to the damaged property is completed, appellee would pay "the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property,…" The policy further indicated that such repair or replacement had to be completed within two years to receive any additional payments on a replacement cost basis.    There is no dispute that appellee paid the actual cash value, as determined by the appraisal process, at the time of the loss.

{¶36} Moreover, appellant argues that appellee's actions in refusing, in March of 2004, to pay him the $225,351.63.00 cost to rebuild made it impossible for him to rebuild the residence within two years.  Impossibility of performance occurs where, after the contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties. *State v. Curtis,* 5th Dist. No.2008CA22, 2008-Ohio-5643. Performance may be impracticable because it will involve a risk of injury to person or property that is disproportionate to the ends to be attained by performance. *B-Right Trucking Co. v. Warfab Field Machining and Erection Corp.,* 11th Dist. No. 2000-T-0072, 2001-Ohio-8724. "Impracticability" means more than "impracticality." *Id.* at 5. A mere change in the degree of difficulty or expense does not amount to impracticability. *Id.* A party is expected to use reasonable efforts to surmount obstacles to performance, and performance is only impracticable if it is so in spite of such efforts. *Id.*

{¶37} As noted by the trial court, appellant failed to "provide any evidence indicating that there was an impossibility of performance or prevention of performance, which prohibited [appellant] from rebuilding his residence." Appellant did not provide the trial court with an affidavit or any type of financial documents. Moreover, there were no unforeseeable events that prevented appellant from complying with the terms of the policy. Lack of finances does not excuse performance upon a contract by establishing impossibility of performance. *Richards v. Hidden Valley*, 8th Dist. No. 43486, 1981 WL 4695 (Dec. 17, 1981).

{¶38} Appellant further contends that he was entitled to statutory interest pursuant to R.C. 1343.03(A) as a result of appellee's breach of the contract. Appellant claims that he is entitled to interest on the $225,351.63 from March of 2004. According to appellant, had appellee "fulfilled its obligation to [appellant] in March of 2004 by paying [appellant] $225,351.63 as the ACV [actual cash value] of the fire loss at that time, [appellant] would have paid off the construction loan and not incurred interest charges...."

{¶39} We concur with appellee that statutory interest would only be payable, in theory, if appellant had established that appellee had breached the contract. There has been no finding that appellee breached the contract with appellee.

{¶40} Moreover, an award of prejudgment interest as to claims arising out of a breach of contract is governed by R.C. 1343.03(A). *Galmish v. Cicchini*, 90 Ohio St.3d 22, 33, 2000-Ohio-7, 734 N.E.2d 782. R.C. 1343.03(A) states in pertinent part: "[W]hen money becomes due and payable upon any * * * note, * * * and upon all judgments, decrees, and orders of any judicial tribunal for the payment of money arising out of * * *

a contract or other transaction, the creditor is entitled to interest at the rate per annum determined pursuant to section 5703.47 of the Revised Code, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in the contract."

{¶41} The policy issued by appellee to appellant states, in relevant part, as follows:

**{¶42} "I. Loss Payment**

{¶43} "We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

{¶44} "a. reach an agreement with you;

{¶45} "b. there is an entry of a final judgment; or

{¶46} "c. there is a filing of an appraisal award with us."

{¶47} In the case sub judice, appellant submitted a Sworn Proof of Loss on March 12, 2004. After the parties were unable to agree on the amount of the loss suffered by appellant an appraisal was conducted. The appraisal award was issued on November 9, 2005. On November 17, 2005, appellee paid appellant and his mortgage holder an additional $63,482.55.  As noted by appellee, its obligations under the policy did not become "due and payable" until the appraisal award was filed.  Appellee issued its payment of the balance of the appraisal award within 8 days of the award.  Appellant, therefore, was not entitled to interest under R.C. 1343.03(A).

{¶48} Appellant further contends that the trial court erred in holding that appellee was not liable for interest that appellant had had to pay on a separate construction loan that appellant had obtained before the fire to finance the original construction on the house. However, "absent policy language indicating otherwise or bad faith established on the part of the insurance company, interest paid to a third party is not recoverable as a cost of repairing or replacing property." *Sam Tisci, Inc. v. State Farm & Cas. Co.*, 48 Ohio App.3d 155, 158, 548 N.E.2d 978 (6th Dist. 1987). There is no policy language "indicating otherwise" and appellant has not demonstrated that appellee acted in bad faith.

{¶49} Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of appellee.

**{¶50}** Appellant's sole assignment of error is, therefore, overruled.

**{¶51}** Accordingly, the judgment of the Perry County Court of Common Pleas is affirmed.

By: Edwards, J.

Gwin, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d1018

[Cite as *Jenkins v. State Farm Fire & Cas. Co.*, 2012-Ohio-6076.]

IN THE COURT OF APPEALS FOR PERRY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

THOMAS JENKINS                          :
                                        :
            Plaintiff-Appellant         :
                                        :
                                        :
-vs-                                    :        JUDGMENT ENTRY
                                        :
STATE FARM FIRE AND CASUALTY            :
COMPANY                                 :
                                        :
            Defendant-Appellee          :        CASE NO. 12-CA-5


For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed. Costs assessed to appellant.

_____

_____

_____

JUDGES