[Cite as *Scott Holding Co., Inc. v. Turbo Restaurants US, L.L.C.*, 2024-Ohio-5240.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| SCOTT HOLDING COMPANY, INC. | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Andrew J. King, J. |
| | : | |
| -vs- | : | |
| | : | Case No.    2024 CA 00037 |
| TURBO RESTAURANTS US, LLC | : | 2024 CA 00066 |
| | : | |
| Defendant-Appellant | : | <u>OPINION</u> |


CHARACTER OF PROCEEDING:    Appeal from the Stark County Court of Common Pleas, Case No. 2022 CV 1823


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    November 1, 2024


APPEARANCES:

For Plaintiff-Appellee

JAMES M. WILLIAMS
KRUGLIAK, WILKINS,
GRIFFITHS &DOUGHERTY CO., L.P.A.
4775 Munson Street N.W.
Canton, OH 44735-6963

For Defendant-Appellant

JEFFERY D. UBERSAX
KUSHNER & HAMED CO., L.P.A.
1375 East Ninth Street, Suite 1930
Cleveland, OH 44114

*Gwin, P.J.*

{¶1} Appellant Turbo Restaurants, US, LLC appeals from the judgment entries of the Stark County Court of Common Pleas. Appellee is Scott Holding Company, Inc.

*Facts & Procedural History*

{¶2} Appellant is a limited liability company that was incorporated in Delaware. Appellant operates as a franchisee for quick service restaurants throughout the country, managing 229 Arby's locations.

{¶3} In January of 2018, the property at issue, which is located at 1125 Market Avenue North, was transferred via limited warranty deed to appellee. At the time of the transfer, the property was subject to a lease agreement dated December 5, 2016, between 2J Investment Group, LLC (appellee's predecessor-in-interest) and D&J Geisen, Inc. (appellant's predecessor-in-interest). Appellee assumed the landlord's obligations under the lease pursuant to an "Assignment and Assumption of Lease Agreement" that was recorded on January 26, 2018. Appellant assumed the tenant's obligations under the lease on November 18, 2021, by virtue of an "Assignment and Assumption of Lease Agreement" from D&J Geisen, Inc. Appellee executed a "Consent to Assignment of Lease Agreement," from D&J Geisen to appellant on the same date.

{¶4} Section 3 of the lease and Section 3 of the "Rent Addendum" are each entitled "Annual Rent," and provide as follows: "* * * Tenant covenants and agrees to pay to Landlord annual rent ("Annual Rent") in the annual amount of ONE HUNDRED FIFTEEN THOUSAND AND 00/100 DOLLARS ($115,000), payable to Landlord in equal monthly installments in the amount of NINE THOUSAND FIVE HUNDRED AND EIGHTY THREE DOLLARS AND 33/100 ($9,583.33) monthly in advance, on the first (1st) day of

the each month for five (5) years of the term." The "Rent Addendum" additionally provides, "Commencing on each of the (i) sixth anniversary of the Annual Rent Commencement Date, (ii) eleventh anniversary of the Annual Rent Commencement date, and (iii) sixteenth anniversary of the Annual Rent Commencement Date, the then current Annual Rent shall be increased to ONE HUNDRED AND FIVE PERCENT (105%) of the then current Annual Rent, with all Rent payments being payable to Landlord in equal monthly installments * * *." As to late charges, both the lease and Rent Addendum provide "there shall be an automatic late charge due to Landlord from Tenant in the amount of five percent (5%) of such delinquent installment of Rent. All such late charges due hereunder shall be deemed additional rent, and are not penalties * * *."

{¶5} Section 13(a) of the lease is entitled "Default" and provides that "if any one or more of the following events occur," it is a default:

(i) if Tenant fails to pay Rent or any other charges required under this Lease when same shall become due and payable, and such failure continues for ten (10) days or more after written notice from the Landlord.

(ii) If Tenant shall fail to perform or observe any term, condition, covenant, agreement, or obligation required under this Lease and such failure continues for thirty days * * *

(iii) If Tenant fails to continuously operate its business within the Premises except for temporary periods of closure caused by casualty, repairs, Acts of God, or temporary and reasonable periods of remodeling, not to exceed ninety (90) days in any Lease Year without first obtaining Landlord's written approval.

{¶6}    Section 13(b) under the "Default" provision states that if any of the events of default occur, the Landlord has the right to terminate the Lease and the Tenant must surrender the Premises to the Landlord.  Further, "notwithstanding such termination, in the event the termination is a result of Tenant's Default, Tenant's liability and obligation under all provisions of this Lease, including the obligation to pay Rent and any and all other amounts due hereunder shall survive and continue."  The "acceleration provision" of Section 13(b) states, "in the event of Tenant's Default under this Lease, Landlord may, by notice to Tenant, accelerate the monthly installments of Rent due hereunder for the remaining term of this Lease, in which event such amount, together with any sums then in arrears, shall immediately be due and payable to Landlord."  Section 13(d) provides the "Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate * * *."  The Rent Addendum similarly provides, "no abatement, offset, diminution, or reduction of (a) Rent, charges, or other compensation or (b) Tenant's other obligations under this Lease shall be allowed * * * under any circumstances or for any reason whatsoever."

{¶7}    The lease's "Use of Premises" section specifically states the "use of the Premises shall be limited to the operation of an Arby's Restaurant, or any such other use as may be approved by Landlord, in writing and in advance, in Landlord's sole discretion."

{¶8}    Upon the assignment of the lease, appellant managed an Arby's fast-food restaurant at the property.  Appellant started paying rent pursuant to the lease on December 1, 2021.  Appellant made seven rent payments under the lease.  However, on May 10, 2022, appellant ceased operations at the premises, and stopped paying rent.  Appellant also failed to pay the property taxes.  Appellant did not notify appellee that

operations would or had ceased at the restaurant. Also, without notice to appellee, appellant listed the property with an Ohio broker in June of 2022, in hopes that it could mitigate its damages by subletting the property. David Fabian, the Chief Development Officer of appellant's holding company Sun Holdings, Inc., stated appellant never took the listing down, and, at of the time of his deposition, the listing was still "actively running." Appellant received no interest in the property in writing, and no one made a formal offer.

{¶9} In July of 2022, the City of Canton sent a letter to appellee notifying appellee it was in violation of Canton City Zoning Ordinances 1187.05 and 1187.24 due to "abandoned signage." Appellee first learned the Arby's had closed when it received this letter. Donald Scott, the owner of Scott Holding Co., tried several times to contact appellant about the closure, but he never received a return call. Fabian confirmed he did not respond to Scott when he called him about the closure.

{¶10} In August of 2022, appellee sent appellant a "Notice of Default," notifying appellant of multiple defaults of the lease, including: failure to pay rent for July and August of 2022; failure to pay the cost of utilities servicing the property for two months; and the failure to continuously operate and comply with ordinances.

{¶11} On November 10, 2022, appellee filed a complaint for breach of lease against appellant. Appellant was served via certified mail on November 28, 2022. Appellee filed a motion for default judgment on December 29, 2022. The trial court granted the motion on December 30, 2022, but did not schedule a damages hearing at that time. Appellee filed a "motion for damages award" on April 5, 2023, and attached the affidavit of Donald Scott. The trial court issued a judgment entry on April 10, 2023, awarding appellee $1,862,112.86, plus prejudgment interest, against appellant.

{¶12} Appellant filed a Civil Rule 60(B) motion for relief from judgment and motion for leave to plead on May 8, 2023. Appellee filed a memorandum in opposition to the motion on May 22, 2023. The trial court granted appellant's motion on June 13, 2023, and gave appellant fourteen days in which to file an answer to the complaint. Appellant filed an answer on June 27, 2023, and listed the following as affirmative defenses: failure to state a claim upon which relief may be granted; duty to mitigate damages through reasonable mitigation efforts; setoff; impracticability of performance; and the damages were not within the reasonable anticipation of the parties at the time the contract was entered into.

{¶13} The trial court held a pre-trial on July 17, 2023, and set the following dates: final pre-trial on February 27, 2024; discovery cutoff on November 17, 2023; dispositive motion cutoff on December 1, 2023; appellee identification of experts on October 6, 2023; appellant identification of experts on November 10, 2023; and trial on March 13, 2024. Appellee identified its experts on October 6, 2023. The parties took depositions in October of 2023 (Donald Scott, David Fabian) and in November of 2023 (Sean Sanford, Dan Miller, Charles Snyder).

{¶14} Appellee filed a motion for summary judgment on December 1, 2023. Attached to its motion were the following documents: the deed dated January 23, 2018 transferring the property to appellee; the lease at issue; appellee's assumption of the lease dated January 24, 2018; appellant's "Consent to Assignment of Lease Agreement;" the notice of default appellee sent to appellant; Donald Scott's affidavit; the deposition of David Fabian, and the deposition of Donald Scott. In Scott's affidavit, he avers the damages for the breach of the lease should be calculated as follows: past due rent of

$19,166.66; future rent of $1,842,946.20 ($543,375 for rent from September of 2022 through February of 2027; $633,937.20 for rent from March 2027 through February of 2032; and $665,643 for rent from March of 2033 through February 2037); expenses of $3,500; and past due property taxes of $59,165.49. Scott averred the total damage award pursuant to the lease should be $1,924,778.35.

{¶15} Appellant filed a response to the motion for summary judgment on December 29, 2023. Appellant attached the following to its response: affidavit of counsel for appellant; the lease at issue; the consent to assignment of lease, the assignment and assumption of lease; several news releases from the Bureau of Labor Statistics; a prime loan rate change document; Fabian's affidavit; the affidavit of Rodrick Paige, an area supervisor for appellant; and the affidavit of Stormy Johnson, a former employee at the Canton Arby's.

{¶16} In its response, appellant did not dispute that it closed the Arby's restaurant and stopped paying rent. However, appellant argued summary judgment was inappropriate for the following reasons: appellant's actions were justified under the doctrine of impracticability due to a severe labor shortage and increased crime in downtown Canton; there was no breach of the lease because if the conditions (crime and severe labor shortage) abate, appellant is ready and willing to reopen the restaurant; and appellee is required to mitigate its damages by crediting the amount of rent received for re-leasing the property against the amount due under the lease. Appellee filed a reply in support of its motion for summary judgment on January 4, 2024.

{¶17} On January 31, 2024, appellant changed counsel, with new counsel filing a "Notice of Appearance and Substitution of Counsel." Appellant filed a motion for leave

to file an amended answer and amended affirmative defenses on February 2, 2024. Appellant sought to add a Statute of Conveyances affirmative defense. Appellee filed a memorandum in opposition to the motion, and appellant filed a reply.

{¶18} The trial court issued two judgment entries on February 21, 2024. In the first judgment entry, the trial court denied appellant's motion to amend its answer. In the second judgment entry, the trial court granted appellee's motion for summary judgment. The trial court found appellant presented no evidence showing the crime rate in downtown Canton changed substantially or that the employment picture changed substantially. Further, that appellee had no duty to mitigate its damages because the duty to mitigate was expressly negated by the terms of the lease. The trial court also noted that both appellant and appellee attempted to re-lease the property, to no avail. The trial court awarded appellee damages in the amount of $1,924,778.35.

{¶19} In March of 2024, appellant changed counsel again, with new counsel filing a "Notice of Substitution of Counsel" on March 22, 2024. New counsel for appellant filed a notice of appeal of the trial court's February 21st judgment entries. New counsel also filed a Civil Rule 60(B) motion to vacate judgment with the trial court on March 22, 2024. In its motion, appellant argued the judgment entries of the trial court should be vacated pursuant to Civil Rule 60(B)(1) and (B)(5) because: the damages awarded were the product of mistake, inadvertence, or excusable neglect; the damage award was mistakenly excessive; the mitigation and acceleration clauses in the lease together create an unenforceable penalty provision; damages must be reduced to present value; and the provisions of the lease should be calculated through 2023, not 2037. Appellee filed a memorandum in opposition to the motion to vacate and appellant filed a reply.

{¶20} Appellant appeals the February 21, 2024 judgment entries of the Stark County Court of Common Pleas, and assigns the following as error:

{¶21} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION TO AMEND ITS ANSWER TO ADD A DEFENSE BASED ON THE STATUTE OF CONVEYANCES, WHICH WOULD HAVE REDUCED AWARDABLE RENT DAMAGES BY OVER 98%.

{¶22} II. THE TRIAL COURT ERRED IN GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT."

{¶23} After appellant filed its appeal of the February 2024 judgment entries, we remanded the case to the trial court to rule on the motion to vacate. The trial court issued a judgment entry on April 29, 2024, denying appellant's motion to vacate.

{¶24} Appellant appeals the April 29, 2024 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶25} "I. THE TRIAL COURT ERRED IN DENYING DEFENDANT'S RULE 60(B) MOTION TO VACATE THE JUDGMENT BELOW, WHICH MADE AN ERRONEOUS AWARD OF EXCESSIVE DAMAGES."

*First Appeal – I.*

{¶26} In appellant's first assignment of error, appellant contends the trial court committed error in denying its motion to amend answer to add an affirmative defense based upon the Statute of Conveyances. Appellant contends it should have been able to assert the affirmative defense because the lease is not notarized; thus, the lease is defective and a month-to-month tenancy is created. Appellant argues appellee would

have suffered no prejudice as a result of the amendment to allow the assertion of a new affirmative defense.

{¶27} Civil Rule 15(A) provides that a party may amend its pleading "only by leave of court or by written consent of the adverse party" when the opposing party has already filed its responsive pleading. An appellate court reviews a trial court's decision on a motion for leave to file amended pleading under an abuse of discretion standard. *Wilmington Steel Products, Inc. v. Cleveland Electric Illuminating Co.*, 60 Ohio St.3d 120 (1991). An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. *State v. Myers,* 2002-Ohio-6658. While Civil Rule 15(A) allows for liberal amendment, the trial court does not abuse its discretion if there is a showing of bad faith, undue delay, or undue prejudice to the opposing party. *Lipchak v. Chevington Woods Civic Assn., Inc.*, 2015-Ohio-263 (5th Dist.).

{¶28} We find no abuse of discretion in the trial court's denial of appellant's motion to amend. By the time appellant filed its motion for leave, the case had been pending for over one year and two months. Further, discovery (including multiple depositions and written discovery), had been completed, the case went to mediation, the summary judgment briefing had been completed, and the case was scheduled for trial forty days later. This short notice gave appellee limited time to prepare for a new affirmative defense, which potentially created undue prejudice to appellee. *Wagoner v. Obert*, 2008-Ohio-7041 (5th Dist.) (denial of motion to amend not abuse of discretion when moved to amend complaint less than sixty days before trial with new cause of action); *Lipchak v. Chevington Woods Civic Assn., Inc.*, 2015-Ohio-263 (5th Dist.) (no abuse of discretion in

denying motion to amend when case pending two years, discovery completed, and motion for summary judgment filed); *Hanick v. Ferrara*, 2020-Ohio-5019 (7th Dist.) (no abuse of discretion when motion to amend filed 15 months after complaint filed and 9 days before summary judgment motion due).

**{¶29}** Further, the information about the lack of notary on the copy of the lease that was attached to the complaint was known to appellant when the complaint was filed in November of 2022. "Where information relied upon in seeking leave to amend should have been known to [a party] earlier, the delay can be considered unjustified." *Hanick v. Ferrara,* 2020-Ohio-5019 (7th Dist.). While appellant contends "no new discovery" would be required, evidence concerning whether the original parties to the lease (2J Investment Group, LLC and D&J Geisen, Inc.) had an original copy of the lease that was notarized or had any information about the potential notarization, or lack thereof, of the lease would certainly be relevant to the claim and something appellee would want to conduct discovery on. Thus, the allowance of the amendment clearly would have delayed the proceedings because it would have resulted in additional discovery. *Porter v. Probst*, 2014-Ohio-3789 (7th Dist.) (no abuse of discretion in denying motion to amend when trial slated to occur in two months). Additionally, the parties and the trial court would have had to deal with the legal issue of whether the Statute of Conveyances bars a complaint when a tenant does not fully pre-pay rents due at the time it abandoned the property, even if the lease is not notarized. See *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282 (1965) (defectively executed lease creates monthly tenancy when tenant vacates premises after fully prepaying rents).

**{¶30}** Due to the potential undue prejudice to the opposing party and the undue delay in filing the motion to amend, the trial court did not abuse its discretion in denying the motion to amend. Appellant's first assignment of error is overruled.

*First Appeal – II.*

**{¶31}** In appellant's second assignment of error, appellant argues the trial court committed error in granting appellee's motion for summary judgment.

*Summary Judgment Standard*

**{¶32}** Civil Rule 56 states, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

**{¶33}** A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Inds. Of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

**{¶34}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

**{¶35}** Appellant makes four arguments as to why the trial court should not have granted appellee's motion for summary judgment: (1) Ohio law does not permit acceleration clauses to be paired with a provision that waives the duty to mitigate damages in commercial leases; (2) future damages must be discounted to present value, and the determination of the appropriate discount rate is a question of fact for the trier of fact to determine; (3) the contract is ambiguous; and (4) there was a question of fact as to appellant's impracticability defense.

**{¶36}** Appellant admits that arguments 1, 2, and 3 are being raised for the first time on appeal, and were not contained in the memorandum in opposition to appellee's motion for summary judgment. However, appellant contends these errors are clear

enough that relief is warranted because, otherwise, appellee receives an improper windfall which affected the basic fairness of the judicial process.

**{¶37}** While appellate courts review summary judgment decisions de novo, the failure to raise arguments in opposition to summary judgment will constitute waiver of such arguments. *Estes v. Robbins Lumber, LLC*, 2016-Ohio-8231 (12th Dist.). Parties are not given a second chance to raise arguments they should have raised below on an appeal of a summary judgment decision. *Id.* Application of this principle does not alleviate the moving party from being required to carry its burden on summary judgment, but does prohibit the party appealing the judgment from advancing new theories or raising issues in order to secure reversal. *Webster v. G&J Kartway*, 2006-Ohio-881 (12th Dist.). However, appellate courts may consider a forfeited argument using a plain-error analysis. *Risner v. Ohio Dept. of Natural Resources, Ohio Division of Wildlife*, 2015-Ohio-3731.

**{¶38}** Because appellant raises these issues for the first time on appeal, we must review these arguments pursuant to the plain error doctrine. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Goldfuss v. Davidson*, 1997-Ohio-401. The plain error doctrine should never be applied to reverse a civil judgment simply because a reviewing court disagrees with the result obtained in the trial court, or to allow litigation of issues which could have easily been raised and determined in the initial trial. *Id.* Even if we were to discover plain error, we

have "discretion to disregard the error and should correct it only to prevent a manifest miscarriage of justice." *Id.*

*Acceleration Clause & Mitigation of Damages*

**{¶39}** Appellant contends it was plain error for the trial court to grant the motion for summary judgment because the combination of the acceleration provision and mitigation waiver in the lease creates a penalty provision that is void, in violation of public policy, and creates an impermissible windfall for appellee.

**{¶40}** The lease contains an acceleration clause in Section 13(b) ("in the event of default the landlord may accelerate monthly installments of rent due for the remaining term of the lease in which event such amount, together with any sums then in arrears, shall immediately be due and payable to Landlord"). The lease also contains the waiver of the duty to mitigate in the "Default" section of 13(d) ("Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate * * *").

**{¶41}** We find no plain error in the enforcement of both provisions simultaneously. While the Ohio Supreme Court has held that a duty to mitigate damages applies to commercial leases, in its opinion, the Court specifically stated, "barring contrary contract provisions, a duty to mitigate damages applies to all leases." *Frenchtown Square Partnership v. Lemstone, Inc.*, 2003-Ohio-3648; see also *U.S. Bank Nat'l Assn v. Gullotta*, 2008-Ohio-6268 (acceleration clauses are permissible); *Apple Ohio, LLC v. Rose Italian Kitchen Solon, LLC*, 2023-Ohio-2880 (8th Dist.) (a duty to mitigate damages can be eliminated by a contrary contract provision in the lease).

**{¶42}** In this case, there is a specific "contrary contract provision" that waives the mitigation requirement. In a commercial lease setting, the duty to mitigate may be changed by the negotiations between the parties. *B&G Properties Limited Partnership v. Office Max, Inc.*, 2013-Ohio-5255 (8th Dist.); *Plaza Dev. Co. v. W. Cooper Ents., LLC*, 2014-Ohio-2418 (10th Dist.); *G&E HC Reit II Parkway Med. Ctr., L.L.C. v. Drs. Ford & Soud, Inc.*, 2019-Ohio-791 (8th Dist.) The contract in this case abrogates the landlord's duty to relet. This is a sufficiently clear statement of the parties' intention, and the contract expresses a clear intent to waive the landlord's duty to mitigate its damages by reletting the premises. *Id.* Here, the parties involved are both sophisticated business entities with equal bargaining power. The provisions included in the lease were negotiated by the parties. In this case, that means appellant remains liable for rent owed for the duration of the lease regardless of reletting. *Id.* Additionally, though not required, the uncontroverted testimony of Donald Scott is that he did attempt to relet the property for over a year, to no avail. Similarly, appellant itself, without notice to appellee, attempted to sublet the property and found no interest.

**{¶43}** We find the cases cited by appellant distinguishable from the instant case. Some of the cases do not involve commercial entities, and/or do not involve a specific commercial contract clause that waives mitigation of damages. *Information Leasing Corp. v. Chambers*, 2003-Ohio-2670 (1st Dist.) (no mitigation of damages clause in contract); *Ford Motor Co. v. Jones*, 2009-Ohio-3298 (8th Dist.) (consumer contract, no mitigation clause in contract); *Telmark, Inc. v. Liff*, 1998 WL 640898 (12th Dist.) (involves individual consumer leasing agreement, no specific waiver of mitigation in the contract); *Frank Nero Auto Lease, Inc. v. Townsend*, 64 Ohio App.2d 65 (8th Dist. 1979) (motor

vehicle repossession case, no specific mitigation waiver in lease). In the federal case cited by appellant, the court actually enforced the acceleration clause and emphasized that public policy requires contracts be enforced as written. *Star Leasing Co. v. Michael's Cooperage Co., Inc.*, 2006 WL 1995722 (S.D. Ohio).

**{¶44}** We find the enforcement of the provisions of the commercial lease specifically bargained-for by two sophisticated business entities does not involve exceptional circumstances which seriously affects the basic fairness, integrity, or public reputation of the judicial process.

*Present Value*

**{¶45}** Appellant argues it was plain error for the trial court to award appellee the amount of damages it did because it did not reduce the amount to present value.

**{¶46}** We find no plain error in the trial court's failure to factor in present value when awarding damages. Courts in Ohio that have examined the issue have held that not accounting for present value in assessing damages is not plain error. *Miller v. Lindsay-Green, Inc.*, 2005-Ohio-6366 (10th Dist.) (no plain error when trial court failed to instruct jury to reduce any damages awarded for future damages to present value); *McNeil v. Kingsley*, 2008-Ohio-5536 (3rd Dist.) (trial court's failure to instruct jury to reduce future damages to present value did not amount to plain error); *Mayhugh v. Grimm*, 1997 WL 128920 (10th Dist.) (failure to raise the issue that future damages which are not discounted to present value are excessive is not plain error).

**{¶47}** The Fifth District case cited by appellant in support of its argument did not conduct a plain error review. Instead, the parties in that case specifically provided the trial court with a specific present value calculation. *Castle Hill Holdings VII, LLC v.*

*Midland Food Services, II, LLC*, 2005-Ohio-1773 (5th Dist.) (trial court erred by not accepting present value calculations presented by appellant). In the Ohio Supreme Court case cited by appellant, the Ohio Supreme Court found that, because of the principle that future damages should be reduced to present value, a statute that allowed a defendant to make periodic lump-sum payments to the plaintiff over time was unconstitutional. *Galayda v. Lake Hospital Systems, Inc.*, 1994-Ohio-64. That case did not involve a plain error analysis. Further, even with the general principle stated that future damages should be reduced to present value, the Ohio Supreme Court was dealing with the constitutionality of the statute. *Id.* The Court did not specifically deal with the issue of failing to instruct the jury in discounting future damages to present value, nor did the court impose a duty upon a trial court to reduce future damages to present value.

{¶48} Appellant cites the *Rodgers* case from the Sixth Circuit, which held that it was plain error for the trial court not to instruct the jury on reducing future damages to present value. *Rodgers v. Fisher Body Div., General Motors Corp.*, 739 F.2d 1102 (6th Cir. 1984). Unlike this case, *Rodgers* was a case brought under the Civil Rights Act, and was a case in which the court found plaintiff's counsel "unduly influenced" the jury with his "extremely hypothetical" and "speculative" damage calculation. *Id.* In this case, the damages were not speculative. Rather, the damage amount is appellant's outstanding obligation under the lease.

{¶49} Further, subsequent to *Rodgers*, the Sixth Circuit declined to apply *Rodgers* to a similar set of circumstances, and stated, "we are confident that the *Rodgers* court did not intend to pronounce an invariable rule of general application." *Kokesh v. Am. S.S. Co.*, 747 F.2d 1092 (6th Cir. 1984); see also *McDole v. City of Saginaw*, 471 Fed.Appx.

464 (6th Cir. 2012) (district court did not commit plain error by refusing to discount the jury award to its present value); *Hawthorne Educational Services, Inc. v. Friedman*, 225 F.3d 658 (6th Cir. 2000) (not plain error for the district court to fail to instruct the jury to account for the present value of future damages in its damage award). These subsequent cases created "an obvious retreat from the position that the trial court's failure to reduce an award of future damages to present value amounts to plain error." *McNeil v. Kingsley*, 2008-Ohio-5536 (3rd Dist.).

**{¶50}** The problem in this case is that, since appellant did not make this argument to the trial court, it did not submit any present value calculations to the trial court. In its appellate brief, appellant suggests the present value is in the "range" of $656,000 to $1,095,000, but does not provide a definitive present value calculation. It is unclear how the trial court was supposed to make these calculations and select an appropriate discount value when appellant provided none of this information to the trial court.

**{¶51}** We find no plain error in the trial court's calculation of damages. The amount is not so grossly excessive or speculative such that it involves exceptional circumstances which seriously affects the basic fairness, integrity, or public reputation of the judicial process. Rather, the damages are the amount of rent appellant contracted to pay under the lease.

*Ambiguous Contract*

**{¶52}** Appellant contends the trial court should not have granted summary judgment because the contract is ambiguous. Appellant argues Section 2(a) of the lease states the lease expires on February 28, 2037, but another provision of the lease indicates

the parties intended to create a six-year lease with three consecutive five-year renewal options, rather than a straight twenty-year lease.

{¶53} A contract that is, by its terms, clear and unambiguous, requires no interpretation or construction and will be given the effect called for by the plain language of the contract. *Brooksedge Homeowners Assn., Inc. v. Stafford*, 2023-Ohio-2660 (5th Dist.). A contract is ambiguous if its provisions are susceptible of two or more reasonable interpretations. *Id.* Whether a contract's terms are clear or ambiguous is a question of law for the court. *Id.*

{¶54} We find no ambiguity in the contract as appellant suggests. The lease clearly defines its term. In Section 2 of the lease, entitled "Term and Rent," it specifically provides the term of the lease. Section 2(a) states, "the term of this Lease (Lease commencement date) shall begin on March 1, 2017 and shall expire on February 28, 2027 (hereinafter the "Termination Date") unless previously terminated or renewed or extended as provided herein." The section cited by appellant in support of its argument is entitled "Option to Renew," and provides that appellant has three five-year options to "extend this Lease upon the same terms." This section does not create any ambiguity as to the term of the lease, and does not create a five-year lease with three options to renew as appellant suggests. Section 10 specifically contains the word "extend." This provision does not negate the original twenty-year term; rather, it gives appellant the choice as to whether to "extend" the lease past that initial twenty-year term.

{¶55} We find no plain error in the trial court's granting of summary judgment despite this alleged "ambiguity." The plain language of the lease provides the termination

date of February 28, 2037.  There are no exceptional circumstances which seriously affects the basic fairness, integrity, or public reputation of the judicial process.

*Impracticability*

**{¶56}** Appellant's final argument is that the trial court committed error in granting the summary judgment motion because there was a question of fact as to impracticability. Appellant did make this argument in its response to the motion for summary judgment. Accordingly, this argument is not waived and need not be reviewed pursuant to the plain error standard.

**{¶57}** Because a lease is a contract, it is subject to the rules governing performance of a contract.  *Bank One, Marion v. Marion, Ohio*, 1997 WL 176140 (3rd Dist.).  In Ohio, the burden of establishing impracticability is high, as Ohio courts "adhere to the stricter standard of impossibility rather than the modern standard of impracticability adopted by the Restatement."  *J.I.L. One LLC v. Kemper*, 2014-Ohio-4932 (1st Dist.). This Court has previously stated that, "impossibility of performance occurs where, after a contract is entered into, an unforeseen event arises rendering impossible the performance of one of the contracting parties."  *Ohio Dept. of Natural Resources v. Big Sky Energy*, 2020-Ohio-4372 (5th Dist.).  Performance may be impracticable or impossible because "it will involve a risk of injury to person or property that is disproportionate to the ends to be attained by performance."  *Id.*  A "mere change in the degree of difficulty or expense does not amount to impracticability."  *Id.*  This is because a party is "expected to use reasonable efforts to surmount obstacles to performance, and performance is only impracticable if it is so in spite of such efforts."  *Id.*  Further, the doctrine is only applicable to those situations where "that which made the lease

purportedly impracticable or impossible could not have been contemplated by the lessee entering the lease." *Bank One, Marion v. Marion, Ohio*, 1997 WL 176140 (3rd Dist.).

**{¶58}** Appellant contends there were issues of fact on impracticability or impossibility because appellant was "hemorrhaging money" with "unique labor problems" and "increased crime" in a downtown location. As to the "hemorrhaging money" argument that the lease became impossible or impracticable to perform because appellant's revenue was not sufficient to pay the rent, it is well-established that the inability to pay rent as a result of insolvency or some other financial difficulty does not constitute an excuse in law because a party generally assumes the risk of financial ability to perform when entering into a contract. *Hiatt v. Giles*, 2005-Ohio-6536 (2nd Dist.); *Jenkins v. State Farm Fire & Cas. Co.*, 2012-Ohio-6076 (5th Dist.) (lack of finances does not excuse performance upon a contract by establishing impossibility of performance). A contracting party assumes the risk of their inability to pay and the doctrine of impossibility or impracticability does not apply when a duty to pay is breached. *Id.*

**{¶59}** As to the alleged "increased crime" in downtown Canton, appellant failed to provide any specific evidence of *increased* crime. The affidavits in opposition to the motion for summary judgment generally allege the location is in a "rougher part" of downtown and this restaurant location was "frequented by drug users." However, none of this evidence details any increase in crime that was "unforeseen" at the time appellant assumed the lease. In his deposition, when asked what specific criminal activity around the location made it impractical to operate, Fabian stated, "I would have to get back to you on that." Counsel asked, "you're not able to articulate any specific criminal activity that you're aware of as we sit here today? You'll need to get back to me?" Fabian

responded, "correct." Fabian had no knowledge of the company filing any police reports, and appellant did not contact appellee with regards to any criminal activity at the property. The location of the property has not changed from downtown since appellant assumed the lease in 2021. Crime occurring near a downtown location is thus not something that "could not have been contemplated" when appellant assumed the lease and is thus not an "unforeseen event" sufficient to trigger the doctrine of impracticability/impossibility.

{¶60} In the affidavits attached to the response to the motion for summary judgment, employees of appellant stated the Arby's restaurant located on the property had "unique labor challenges," "extreme difficulty locating employees to work at this location," and "constant staffing issues." However, as noted above, the mere change in the degree of difficulty or expense does not amount to impracticability. The lease specifically states in Section 19 that the use of the premises "shall be limited to the operation of an Arby's Restaurant." A staffing issue at a restaurant is something that "could have been contemplated" when appellant assumed the lease. Further, appellant's employee (Paige) testified that "by the time we ultimately closed the location, the employee headcount was only very slightly higher as it had been" when appellant acquired it. There is no "unforeseen event" with regards to staffing sufficient to trigger the doctrine of impracticability or impossibility where there were slightly more staff working when the location closed than when appellant acquired it.

{¶61} Appellant failed to provide any evidence indicating there was a question of fact as to impossibility or impracticability of performance in this case. Accordingly, the trial court did not commit error granting summary judgment to appellee.

{¶62} Appellant's second assignment of error is overruled.

*Second Appeal – I.*

**{¶63}**  In appellant's second appeal, it argues the trial court erred in denying its Civil Rule 60(B) motion to vacate the judgment because the judgment contained an erroneous award of excessive damages.  Appellant made three arguments in its motion to vacate: (1) a commercial lease cannot contain both an acceleration provision and provision that waives the duty to mitigate damages; (2) Ohio law requires future damages be discounted to present value; and (3) the contract is ambiguous as to its duration.

**{¶64}**  To prevail on a motion for relief from judgment brought under Civil Rule 60(B), a movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civil Rule 60(B)(1) through (5); and (3) the motion is made within a reasonable time.  *GTE Automatic, Inc. v. ARC Industries*, 47 Ohio St.2d 146 (1976).  A failure to establish any one of the three requirements will cause the motion to be overruled.  *Argo Plastic Products Co. v. Cleveland*, 15 Ohio St.3d 389 (1984).  There is no dispute that the motion in this case was made within a reasonable time.

**{¶65}**  A motion for relief from judgment is addressed to the sound discretion of the trial court and must not be disturbed by this Court absent an abuse of discretion.  *Griffey v. Rajan*, 33 Ohio St.3d 75 (1987).  The Supreme Court of Ohio has defined the term abuse of discretion as implying the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

**{¶66}**  We first note that a party may not use a Civil Rule 60(B) motion as a substitute for a timely appeal.  *Doe v. Trumbull Co. Children Services Board*, 28 Ohio St.3d 128 (1986).  As evidenced from the fact that appellant did appeal the summary

judgment entry and advanced the same arguments on appeal that it did in its motion to vacate, the arguments appellant presented in its motion to vacate could have been raised in a timely direct appeal. Since a 60(B) motion to vacate cannot be used as a substitute for appeal, the trial court correctly denied the motion to vacate.

{¶67} Even if the motion to vacate was not being used as a substitute for appeal, we find the trial court did not abuse its discretion in denying the motion.

{¶68} Appellant argues it is entitled to relief pursuant to Rule 60(B)(1) due to excusable neglect. To determine whether neglect is excusable under Rule 60(B)(1), a court must consider all the surrounding facts and circumstances. *Rose Chevrolet v. Adams*, 36 Ohio St.3d 17 (1988). Excusable neglect has been defined as some action "not in consequence of the party's own carelessness, inattention, or willful disregard of the process of the court, but in consequence of some unexpected or unavoidable hindrance or accident." *Stevens v. Stevens*, 2016-Ohio-7925 (5th Dist.).

{¶69} We find the trial court did not abuse its discretion in finding no excusable neglect under these facts and circumstances. Appellant is essentially seeking to make new arguments that could have been presented to the trial court, by previous counsel, in the summary judgment briefing. It is well-settled that mere carelessness on a litigant's part, or on the part of his or her attorney, is not sufficient to rise to the level of mistake, inadvertence, surprise, or excusable neglect. *Id.* Excusable neglect is not present if the party seeking relief could have prevented the circumstances from occurring. *Id.* The failure of the attorney who represented appellant at the time the summary judgment response was filed to include arguments that a later attorney for appellant thought the first attorney should have made or included was not the consequence of some

unexpected or avoidable hindrance or accident. Rather, appellant could have prevented the circumstances from occurring. The trial court's purported failure to consider certain evidence and arguments in rendering judgment is "not the type of mistaken contemplated by 60(B)(1)." *Echemann v. Echemann*, 2018-Ohio-1441 (3rd Dist.).

**{¶70}** Appellant also contends its motion should have been granted pursuant to Civil Rule 60(B)(5) because Rule 60(B)(5) can be used to correct an excessive damage award. Civil Rule 60(B)(5) is intended as a catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment, but it is not to be used as a substitute for any of the other more specific provisions of Rule 60(B). *Id.* "The grounds for invoking Civil Rule 60(B)(5) should be substantial," and relief on these grounds should be granted only in extraordinary situations where the interests of justice require it. *Caruso-Ciresi, Inc. v. Lohman*, 5 Ohio St.3d 64.

**{¶71}** The cases cited by appellant are those in which the relief granted was different in kind that the relief sought in the complaint (*Fors v. Beroske*, 2013-Ohio-1079 (6th Dist.)), there were excessive punitive damages that were awarded ex parte (*Bajtkiewicz v. Wisniewski*, 1993 WL 19537 (8th Dist.)), or where the evidence at a default hearing was insufficient because the plaintiff presented zero evidence of emotional distress (*Carr v. Charter National Life Ins. Co.*, 22 Ohio St.3d 11 (1986)). None of those circumstances exist in this case. Rather, the damages awarded by the trial court directly and specifically represent appellant's outstanding financial obligation under the lease, and are not so excessive they "shock the conscience."

**{¶72}** Further, Rule 60(B)(5) is not appropriate when a party wholly omits an argument from summary judgment briefing. *Van Sycoc v. Desai*, 2012-Ohio-3864 (6th

Dist.).  The three arguments appellant made in its motion to vacate are all arguments it omitted during the summary judgment briefing.  The judgment rendered in this case is not so extraordinary or unusual as to rise to the level of other situations in which Ohio courts have found relief under Rule 60(B)(5) necessary.

**{¶73}**  Finally, as detailed above in our analysis of appellant's first appeal, we find the trial court did not abuse its discretion in finding appellant did not have a meritorious defense.

**{¶74}**  Appellant's first assignment of error in its second appeal is overruled.

**{¶75}**  Based on the foregoing, appellant's assignments of error are overruled in both their first and second cases.  The judgment entries of the Stark County Court of Common Pleas are affirmed.

By: Gwin, P.J.,

Wise, J., and

King, J., concur

[Cite as *Scott Holding Co., Inc. v. Turbo Restaurants US, L.L.C.*, 2024-Ohio-5240.]