[Cite as *Williams v. Chelsea Place Apts.*, 2025-Ohio-2417.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Matthew R. Williams

    Appellee

v.

Chelsea Place Apartments

    Appellant

Court of Appeals No.  L-24-1173

Trial Court No.  CVI-23-0021

**<u>DECISION AND JUDGMENT</u>**

Decided:  July 8, 2025

* * * * *

Joseph Sobecki, for appellee.

Douglas A. Wilkins, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Following a bench trial, defendant-appellant, Chelsea Place Apartments, appeals the June 13, 2024 judgment of the Sylvania Municipal Court, entering judgment in favor of plaintiff-appellee, Matthew Williams.  For the following reasons, we reverse.

### I.  Background

{¶ 2} Matthew Williams was a tenant of Chelsea Place Apartments ("Chelsea") beginning in 2019.  Most recently, he signed a one-year lease on April 13, 2022, for the

term of May 6, 2022, to May 31, 2023. The lease agreement contained the following clause concerning breaking of the lease:

> 20) YOUR BREAKING OF LEASE - BUYOUT OPTION. If you vacate or abandon the Apartment prior to the Lease End Date with or without notice, you shall be in violation of the Lease and shall remain responsible for all of our costs and damages resulting therefrom, which may include, but is not limited to, payment of all rent until the Lease End Date. You cannot be released from your responsibilities under this Lease for any reason, including, but not limited to: school withdrawal or transfer, job transfer, marriage, separation, divorce, reconciliation, loss of co-residents, loss of employment or bad health, unless specifically permitted by the terms of the Lease or by State or Federal law. However, we do understand that situations may arise that may cause you to need to terminate your lease early, and for that reason, we may offer a Lease Buyout Option. Information about this option can be obtained from the Management Office.

{¶ 3} On December 2, 2022, Williams notified Chelsea that he was moving out of town and would no longer be occupying the apartment. He brought with him a written notice of his intent to vacate the apartment, but it was not collected by Chelsea's manager because, Williams was told, "it was not going to do much to help [him] break [his] lease." He was informed that the only way to break the lease was to sign a document and pay two months' rent.

{¶ 4} Williams testified that because he felt pressured to do so and because he wanted to "tie up [his] loose ends in Toledo" before moving, he signed the paper and paid the two months' rent. (In fact, on cross-examination, it was established that the paper was signed on April 13, 2022, the same date Williams signed the lease agreement.) The paper referred to is a Buyout Option that permits the early termination of a lease upon payment of two months' rent. It provides as follows:

2.

**Chelsea Place Apartments**
**EARLY TERMINATION OF LEASE**
**RESIDENT'S ELECTION Of BUYOUT OPTION**

This is an agreement for the early termination of the RESIDENTIAL LEASE AGREEMENT (the "Lease ), dated: **03/04/2022**, between Resident(s): **Matthew Williams** (hereinafter referred to as "you" or "your") and Landlord: **Chelsea Place Apartments** (hereinafter referred to as "we" or "us" or "our') for the rental unit located at: **4430 N Holland Sylvania Rd #3311, Toledo, OH 43623**, (hereinafter the "Apartment').

You have elected "the Buyout Option" to terminate your early Lease before the lease end date. In consideration of our consent to an early lease termination, you agree to all of the following conditions:

1.    This agreement will serve as your Notice to Vacate on or before (the "Vacate Date"). The Notice to Vacate takes effect on the day that you provide written notice to Landlord, and the Vacate Date shall be no less than **30 days** from that Vacate Date. You agree to remove all personal possessions, surrender the keys, and vacate the Apartment on or before the Vacate Date.

2.    You agree to pay a Lease Buyout equal to two months of the regular Base Monthly Rent, for a total of **$1,940.00**. This payment must be received by us on the same day that you execute this Election of Buyout Option.

3.    If you were given a rent concession that was conditioned upon your completion of the lease term, because of your early termination of the lease, you must repay the concession. If this is applicable you must repay the pro-rated concession to us. This payment must be received by us on the same day that you execute this Election of Buyout Option.

4.    You agree to pay the rent and any related charges, such as utilities, that accrue through the Vacate Date according to your Lease.

5.    You understand that you are giving notice to vacate by a certain date, and if you fail to vacate by the Vacate Date, you are a "Holdover Tenant" and you shall also be responsible for all our costs and damages resulting therefrom, and for any provisions of State law pertaining to holdover tenants.

3.

6.  If you fully comply with this Agreement, the Lease shall terminate on the Vacate Date, and we shall release you of any further rent obligations pursuant to the Lease, excluding any charges for damages to the Apartment or other unpaid charges, which cannot be determined until after you vacate.  Any Security Deposit shall be handled according to State law and the terms of the Lease.

7.  If you vacate the apartment before the lease end date but fail to strictly comply with all of the terms and obligations of this Agreement, then you have waived the lease buyout option and you shall be in violation of the Lease and remain responsible for all our costs and damages resulting therefrom.

**THIS AGREEMENT IS NOT VALID UNLESS ALL ADULT RESIDENTS HAVE SIGNED**[.]
THIS AGREEMENT IS A LEGALLY BINDING DOCUMENT.  YOU MAY TAKE A COPY OF THIS AGREEMENT FOR REVIEW AND/OR TO CONSULT AN ATTORNEY BEFORE SIGNING[.]

{¶ 5} Williams vacated the apartment on December 31, 2022.  According to the evidence presented at trial, the apartment was leased to a new tenant beginning January 31, 2023, at a monthly rate of $1,200, more than the monthly rate Williams was paying.  Claiming that Chelsea owed him a duty to mitigate its damages, Williams filed a complaint seeking to recoup the amount he paid to be released from the lease—$1,940—minus $32.33 (the daily rental rate) multiplied by the number of days the unit remained vacant.  Chelsea maintained that because Williams elected the Buyout Option, the duty to mitigate had been eliminated by contract.

{¶ 6} In a written opinion, the trial court awarded judgment in Williams's favor for $970 plus costs.  It found that it need not consider whether a residential lease agreement may lawfully contain a provision disclaiming the common-law duty to mitigate damages because the provision here was an unenforceable penalty, rather than a permissible

4.

liquidated-damages provision.  As such, the court held, it was invalid and Chelsea continued to owe a common-law duty to mitigate damages.  The trial court concluded that Chelsea fulfilled its duty to mitigate given that the apartment was re-rented only a month after it was vacated by Williams, but because it was successfully re-rented after being vacant for only one month, it awarded Williams the amount he paid for the second month of rent that Chelsea collected under the Buyout Option--$970.

{¶ 7} Chelsea appealed.  It assigns the following errors for our review:

The Lower Court Erred As a Matter of Law in Refusing to Find that the Common Law Duty of Mitigation can be Negotiated Away[.]

The Lower Court Erred As A Matter of Law in Finding that the Buy-out Agreement Created an Unenforceable Penalty and that requiring Payment of Two Months of Rent was not a Valid Liquidated Damage Provision[.]

## II.  Law and Analysis

{¶ 8} In its first assignment of error, Chelsea argues that the trial court erred in refusing to find that a residential tenant may contractually waive a landlord's common-law duty to mitigate damages.  It maintains that the Buyout Agreement annulled the duty to mitigate that it otherwise would have owed under the lease agreement.  Chelsea insists that the trial court erred in failing to recognize that this duty was validly eliminated by agreement.

{¶ 9} In its second assignment of error, Chelsea argues that the trial court erred when it found that the two-month Lease Buyout was an unenforceable penalty provision rather than a valid liquidated damages provision.  It maintains that the two-months' rent provision meets all requirements for a valid, enforceable liquidated damages clause.

5.

**{¶ 10}** We find that the two-month Lease Buyout provision was improperly characterized as being either a liquidated-damages provision or an unenforceable penalty. This led to a faulty analysis by the trial court. Because the construction of a written contract is a matter of law that we review de novo, we will undertake to perform what we believe to be the appropriate analysis here rather than constricting ourselves to the analysis performed in the trial court. *See Long Beach Assn., Inc. v. Jones,* 82 Ohio St.3d 574, 576 (1998).

### A. The Duty to Mitigate

**{¶ 11}** It is well-established that in both commercial and residential contexts, landlords generally owe a duty to mitigate damages caused by a breach of a lease agreement by attempting to re-rent the property. *Dennis v. Morgan*, 89 Ohio St.3d 417, 419 (2000); *Frenchtown Square Partnership v. Lemstone, Inc.,* 2003-Ohio-3648, ¶ 20-21("[B]arring contrary contract provisions, a duty to mitigate damages applies to all leases."). "Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level." *Dennis* at *id.* If a landlord acts reasonably in attempting to secure a new tenant, the former tenant will be liable for rent up to the point of the landlord finding a new tenant, or the expiration of the lease, whichever is earlier. *Id.*

### B. The Parties' Agreements

**{¶ 12}** Paragraph 20 of the residential lease agreement applies where a tenant intends to "break" the lease—i.e., where the tenant intends to vacate the apartment before the lease expires ("the Lease End Date"). It provides that if a tenant vacates the

6.

apartment before the lease expires, he or she "shall remain responsible for all of our costs and damages resulting therefrom, which may include, but is not limited to, payment of all rent until the Lease End Date." In the event a tenant gives notice of his or her intent to break the lease, the lease agreement contemplates that Chelsea "may offer a Lease Buyout Option."

{¶ 13} The Buyout Option is a second—separate—agreement under which the tenant agrees to pay two months' rent (the "Lease Buyout") in exchange for Chelsea's consent to early termination of the lease agreement and—by extension—its agreement to forego recovery of any additional amounts that may otherwise be owed under paragraph 20 of the lease agreement.

{¶ 14} Here, the Buyout Option was extended to Williams at the time he signed the lease agreement. It was executed on the same date as the lease agreement. The Buyout Option offers benefits and detriments to both parties to the agreement. As to the landlord, the Buyout Option guarantees recovery of two months' rent and saves the landlord the time and expense of having to collect damages from a tenant who breaks the lease agreement. At the same time, by consenting to early lease termination, the landlord waives its right to hold the tenant responsible for payment of rent for any additional months that the apartment remains vacant. As to the tenant, the Buyout Option limits the tenant's liability for unpaid rent to only two months rather than, potentially, the entire remaining term of the lease. But—according to Chelsea—it also deprives the tenant of any offset or further limitation of liability should the landlord succeed in immediately re-

7.

renting the unit to another tenant.  Stated another way, Chelsea maintains that the Buyout Option relieves it of its duty to mitigate.  We will address Chelsea's position after we explain where the trial court judgment went off track.

### C.  Liquidated Damages

{¶ 15} Chelsea asked the trial court to find that the two-month Lease Buyout was a valid liquidated-damages provision.  The trial court decided that it was not a valid liquidated-damages provision, but rather an unenforceable penalty.

{¶ 16} "Liquidated damages are an agreed upon amount of money to be paid in lieu of actual damages in the event of a breach of contract."  *Connour v. Steel*, 2004-Ohio-1162, ¶ 26 (2d Dist.).  "Liquidated damages, by definition, are a 'pre-breach' contractual estimation of the actual damages that would probably ensue from a breach of the contract."  *Mentor Lagoons, Inc. v. Laity,* 1985 WL 9999, *1 (11th Dist. May 24, 1985).  A liquidated-damages provision will be enforced if (1) the damages would be "uncertain as to amount and difficult of proof," *and* (2) "the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties," *and* (3) "the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."  *Samson Sales, Inc. v. Honeywell, Inc.,* 12 Ohio St.3d 27 (1984), syllabus.  If these three elements are not met, a provision requiring payment of a certain amount for breach of a contract will be found to be an unenforceable penalty.  *Id.* at 29.

8.

**{¶ 17}** The trial court found that the two-month Lease Buyout was not a liquidated-damages provision because (1) damages resulting from the breach of a residential lease are easy to calculate, and (2) paragraph 20 of the lease agreement and paragraph two of the Buyout Option contradicted one another, calling into question whether the parties intended that damages in that amount should follow a breach. As such, the court found that it was an unenforceable penalty. We find that the two-month Lease Buyout was neither a liquidated damages provision nor an unenforceable penalty. Rather, the two-months' rent provision was the consideration exchanged for Chelsea's consent to early lease termination under the Buyout Option.

**{¶ 18}** "Consideration is the bargained for legal benefit or detriment." *Fry v. FCA US LLC,* 2017-Ohio-7005, ¶ 17 (6th Dist.). It "may consist of either a detriment to the promisee or a benefit to the promisor." *Williams v. Ormsby*, 2012-Ohio-690, ¶ 16, citing *Irwin v. Lombard Univ.,* 56 Ohio St. 9, 19 (1897). Consideration is "a required element for a contract." *State v. Joy,* 1994 WL 24326, *3 (6th Dist. Jan. 28, 1994). The two-month Lease Buyout was not a term of the lease agreement and the payment made under the Buyout Option was neither damages nor a penalty triggered by a breach of the lease agreement—it was consideration for the Buyout Option.

**{¶ 19}** If the lease agreement had simply been breached by Williams, Williams would be responsible for "payment of all rent until the Lease End Date." In that case, Chelsea would be responsible for mitigating its damages. Instead, the parties purported to enter into the Buyout Option, pursuant to which Chelsea agreed to accept two-months'

9.

rent in exchange for an earlier lease termination date. If the Buyout Option was successfully executed, we must then consider whether the Buyout Option effectively eliminated Chelsea's duty to mitigate damages.

### D. Enforceability of the Agreement, Generally

{¶ 20} The Buyout Option provides that "[i]n consideration of our consent to an early lease termination, you agree to all of the following conditions: . . . You agree to pay a Lease Buyout equal to two months of the regular Base Monthly Rent, for a total of **$1,940.00**." The Buyout Option emphasizes that full compliance with its terms is essential to its enforceability. It states:

> 6. If you fully comply with this Agreement, the Lease shall terminate on the Vacate Date, and we shall release you of any further rent obligations pursuant to the Lease, excluding any charges for damages to the Apartment or other unpaid charges, which cannot be determined until after you vacate.

> 7. If you vacate the apartment before the lease end date but fail to strictly comply with all of the terms and obligations of this Agreement, then you have waived the lease buyout option and you shall be in violation of the Lease and remain responsible for all our costs and damages resulting therefrom.

This brings us to one potential bar to the enforceability of the Buyout Option.

{¶ 21} Paragraph 2 of the Buyout Option states that payment of the two-month Lease Buyout "must be received by us on the same day that you execute this Election of Buyout Option." The Buyout Option shows—and the trial court found—that Williams executed that agreement on April 13, 2022 ("For unexplained reasons, the parties signed the buyout-option agreement in April 2022."). Nevertheless, Williams did not pay the

10.

Lease Buyout until December 3, 2022, at the earliest—when he went to the bank "and pulled out a cashier's check." This means that the Lease Buyout was not received by Chelsea on the same day that Williams executed the Election of Buyout Option. As such, Williams did not "fully comply with [the Agreement]" and did not "strictly comply with all of the terms and obligations of [the] Agreement."

{¶ 22} Strict compliance with the terms of an agreement may be waived, however, and here, Chelsea clearly waived strict compliance with paragraph 2 of the Buyout Option because it accepted payment of the Lease Option seven months after the agreement was executed. *See Gross v. Cassidy,* 1989 WL 5419, *3 (6th Dist. Jan. 27, 1989). Accordingly, we find the Buyout Option enforceable, and we turn to the issue at the heart of this appeal: whether the Buyout Option eliminated Chelsea's duty to mitigate damages.

### E. Contracting Away the Duty to Mitigate

{¶ 23} R.C. 5321.06 permits a landlord and tenant to include terms "governing the rights and obligations of the parties" so long as those terms "are not inconsistent with or prohibited by Chapter 5321. of the Revised Code or any other rule of law." "Traditional contract principles apply when a court interprets rental agreement provisions." *Ritter v. Fairway Park Properties, L.L.C.,* 2004-Ohio-2518, ¶ 17 (9th Dist.), citing *Pool v. Insignia Residential Group*, 136 Ohio App.3d 266, 270 (1st 1999). "If terms in a contract are clear and unambiguous, interpretation is a question of law for the court." *Krause v.*

11.

*Spartan Stores, Inc.,* 2004-Ohio-4365, ¶ 12 (6th Dist.), citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978), paragraph one of the syllabus.

**{¶ 24}** Several Ohio courts interpreting commercial lease agreements have found that the parties contractually agreed to eliminate the lessor's duty to mitigate its damages. Chelsea asks us to hold that this duty may also be eliminated in a residential lease agreement.

**{¶ 25}** It is true that Ohio courts have upheld provisions in commercial leases abrogating the landlord's duty to mitigate. Those cases involve facts that are distinguishable from the present case because (1) the term eliminating the duty to mitigate appeared in the lease agreement itself as a consequence for its breach—not in a separate agreement that modified the terms of the lease, and (2) the lease agreements contained terms *explicitly* eliminating the duty to mitigate.

**{¶ 26}** In *Scott Holding Co., Inc. v. Turbo Restaurants US, LLC*, 2024-Ohio-5240, the court found that the parties' contract expressed a clear intent to waive the landlord's duty to mitigate its damages where the contract provided:

> Landlord shall have the right, but not the obligation, to relet the whole or part of the Premises upon terms which Landlord, in its sole discretion, deems appropriate. . . . *[N]o abatement, offset, diminution, or reduction of (a) Rent, charges, or other compensation or (b) Tenant's other obligations under this Lease shall be allowed . . . under any circumstances or for any reason whatsoever*." (Emphasis added.) *Id.* at ¶ 6.

**{¶ 27}** The court in *B & G Prop. Ltd. Partnership v. Office Max, Inc.,* 2013-Ohio-5255 (8th Dist.), reached the same conclusion where the terms of the lease provided as follows:

12.

> In case of re-entry, or of the termination of this Lease . . . *Tenant shall remain liable for the Fixed Rent, Additional Rent and other obligations of Tenant herein provided for the balance of said term, whether Premises be relet or not. . . . Landlord shall not be liable for failure to relet the Premises, and in the event of reletting, for failure to collect the rent under such reletting.* (Emphasis added.) *Id.* at ¶ 24.

**{¶ 28}** The court in *G & E HC Reit II Parkway Med. Ctr., L.L.C. v. Drs. Ford & Soud, Inc.*, 2019-Ohio-791 (8th Dist.), found that the landlord contracted around its duty to mitigate where the contract contained the following provision:

> If Tenant shall default in the payment of any installment of rent, or in the observance or performance of any of Tenant's other covenants, agreements or obligations hereunder, * * * Tenant will indemnify Lessor against all loss of rents and other damages which it may incur by reason of such termination during the residue of the Lease Term, and also against all attorney's fees and expenses incurred in enforcing Lease, there shall be allowed to the prevailing party, to be included in any judgment recovered, reasonable attorney's fees and other costs to be fixed by the court. Given the aforementioned circumstances, *Lessor shall have the right to rent the Leased Premises to a third party without waiving any right to claim against Tenant and without incurring any obligation to pay over to Tenant any amounts collected pursuant to rental.* (Emphasis added.) *Id.* at ¶ 32.

**{¶ 29}** And in *Frenchtown Square Partnership v. Nick Enterprises, Inc.,* 2021-Ohio-663, ¶ 12 (11th Dist.), the court found that the duty to mitigate damages was obviated where the lease provided that "Landlord has *no duty to attempt to mitigate any damages* resulting from Tenant's failure to observe or perform any of the terms, covenants and conditions of this Lease * * *." (Emphasis added.)

**{¶ 30}** Here, because the lease agreement itself does not purport to eliminate the duty to mitigate damages, we need not specifically address whether a residential lease could, under R.C. 5321.06, include a term like the ones provided in the commercial lease

13.

agreements recited above. However, we do need to determine whether, here, the separate Buyout Option effectively eliminated Chelsea's duty to mitigate damages. We find that it did.

{¶ 31} The term of the lease agreement was specified in the agreement. Williams knew that by moving out five months before the lease end date, he was "breaking" the lease under paragraph 20 and was obligated to continue paying rent for the remainder of the lease agreement. While it was possible that Chelsea may have found a new tenant immediately, thereby reducing the amount that Williams would actually owe as damages for breaking the lease, Williams faced exposure of at least $4,850 ($970/mo. x five months). The Buyout Option operated as an alternative to the "breaking of lease" provision in the lease agreement, permitting early termination and significantly reducing Williams's exposure.

{¶ 32} As explained above, "agreements must be supported by consideration." *Williams v. Ormsby,* 2012-Ohio-690, ¶ 22. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Id.* at ¶ 16, citing *Irwin,* 56 Ohio St. at 19. The Lease Buyout was consideration for Chelsea's agreement to early termination of the lease. If under the Buyout Option Williams was permitted to both cap his damages exposure at two months' rent *and* receive a refund for Chelsea's successful mitigation of damages, there would be no detriment to Williams and no benefit to Chelsea under that agreement.

14.

{¶ 33} Despite the absence of an explicit acknowledgement in the Buyout Option that by entering into that agreement the tenant is forfeiting a potential right to an offset for rent collected from a new tenant, we conclude that the Buyout Option is enforceable as written and negated Chelsea's duty to mitigate damages. Williams is not entitled to recoup any portion of the Lease Buyout.

{¶ 34} Turning to Chelsea's assignments of error as phrased, to the extent that we have concluded that Chelsea owed no duty to mitigate under the Buyout Option, we find its first assignment of error well-taken. As to its second assignment of error, we find it well-taken, in part, and not well-taken, in part. More specifically, we find that the trial court did err in finding that the Buyout Option created an unenforceable penalty, but we do not find that it was a valid liquidated-damages provision.

### III. Conclusion

{¶ 35} The parties entered into two separate agreements—the lease agreement and the Buyout Option—which provided that Chelsea would agree to early termination of the Lease in exchange for the Lease Buyout. The Lease Buyout—which was equal to two months' rent—was neither liquidated damages nor an unenforceable penalty. It was consideration for the Buyout Option. The Buyout Option was an alternative to breaking the lease, and was not subject to a duty to mitigate damages. As such, the trial court erred by awarding damages to Williams.

{¶ 36} We find Chelsea's first assignment of error well-taken and its second assignment of error well-taken, in part, and not well-taken, in part. We reverse the June

13, 2024 judgment of the Sylvania Municipal Court and remand for proceedings consistent with this decision. Williams is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Charles E. Sulek, P.J.
CONCUR.

_____
JUDGE

Gene A. Zmuda, J.
CONCURS AND WRITES
SEPARATELY.

_____
JUDGE

**ZMUDA, J., concurring,**

{¶ 37} Because I agree with the majority in reversing, but would reverse based on additional considerations, I write separately in concurrence.

{¶ 38} The majority notes the two separate agreements between appellant, Chelsea Place Apartments, and appellee, Matthew R. Williams. The one-year lease and the early termination agreement (Buyout Option) were executed at the same time, but the Buyout Option required strict compliance with its terms to have effect, including tender of two months' rent with execution of the Buyout Option. Williams attempted to terminate his

16.

lease early by letter in December, 2022, and after Chelsea refused to accept the letter as early termination without the payment required by the Buyout Option, Williams tendered the payment, $1,940.00. After Williams learned that Chelsea re-rented the apartment after one month, he filed a complaint seeking a return of funds based on Chelsea's common law duty to mitigate its damages for breach of the lease.

{¶ 39} Williams' primary claim against Chelsea concerns Chelsea's windfall, considering Williams accepted the Buyout Option by tendering two months' rent under Williams' original lease in return for early termination, and Chelsea re-rented the apartment within a month at a higher monthly rate. In other words, Williams seeks damages for unjust enrichment, despite the fact the parties entered a new contract that governed the matter and Williams did not seek to set that contract aside entirely but sought a remedy that would have modified that new contract. Williams' claim also misconstrues an affirmative defense as a cause of action. *See Oldendick v. Crocker,* 2016-Ohio-5621, ¶ 62 (8th Dist.), citing *Telecom Acquisition Corp. I v. Lucic Ents.,* 2016-Ohio-1466, ¶ 69 (8th Dist.) ("The failure to mitigate damages is an affirmative defense."). As a result, I believe the majority addresses a claim that was never properly presented to the trial court.

{¶ 40} In his amended complaint, Williams sought a return of the portion of his $1,940.00, the two months' rent he tendered pursuant to the Buyout Option, as overpayment of Chelsea's damages under the one-year lease. Williams additionally alleged that Chelsea verbally pressured him into tendering the Buyout Option payment by

refusing his notice of termination that did not include tender of $1,940.00. Williams alleged Chelsea's insistence that he comply with the Buyout Option, without notifying him of Chelsea's common law duty to mitigate its damages under the one-year lease, constituted fraudulent misrepresentation and bad faith by Chelsea. However, Williams did not otherwise allege any claim independent of the purported damages under the one-year lease. Significantly, Williams did not pursue a claim based on fraudulent inducement to negate his acceptance of the Buyout Option, focusing solely on Chelsea's windfall occurring the month following that acceptance.

{¶ 41} The trial court rejected Chelsea's claim that the Buyout Option contained a liquidated damages clause, and instead determined the amount constituted an unenforceable penalty for early termination. In reversing the trial court, the majority finds the terms of the parties' agreement constitute neither an unenforceable penalty nor a liquidated damages clause. Instead, the Buyout Option is a separate contract wherein Williams agreed to pay $1,940.00 in return for Chelsea's consent to early lease termination without additional consequences under the one-year lease.

{¶ 42} I agree with the majority that the Buyout Option represents a new agreement. However, Williams did not challenge the new agreement but sought to preserve his right to early termination with a partial refund of his payment, based on Chelsea's windfall and the affirmative defense of failure to mitigate damages. Under the original lease, Williams would have been responsible for all remaining payments under the lease until Chelsea secured a new tenant or the lease expired, whichever occurred

18.

earlier, and Chelsea would have the obligation to mitigate its damages arising from Williams' breach of the lease through reasonable efforts to secure a new tenant. *Dennis v. Morgan,* 89 Ohio St.3d 417, 419 (2000). Arguably, Chelsea mitigated its own damages, and the new agreement was silent on this issue, with Williams' damages contractually limited by the new agreement.

{¶ 43} Finally, I note that Chelsea's practice of entering into Buyout Option agreements with residential tenants without notice that – in the event of breach – Chelsea had a duty to mitigate its damages and could collect all rent owed under the lease to the end of the term *or* until a new tenant is secured, whichever occurred first, is potentially concerning. However, Williams' claim did not place this concern before the trial court. Instead, Williams focused on Chelsea's windfall after Chelsea secured a new tenant within the next month, with damages narrowly focused on this windfall.

{¶ 44} With these additional considerations, I concur in the majority's decision as to Williams' assignments of error, and concur in reversing the judgment of the Sylvania Municipal Court.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.