[Cite as *TT419, Inc. v. JOGA Holdings Corp.*, 2026-Ohio-1022.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

TT419, Inc.

        Appellant

v.

JOGA Holdings Corp.

        Appellee

Court of Appeals No. L-25-00135

Trial Court No. CI0202102934

**DECISION AND JUDGMENT**

Decided: March 24, 2026

* * * * *

Julie A. Douglas, and
Erick G. Chappell, for appellee.

Thomas D. Pigott, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellants, TT419, Inc. ("TT419") and Joseph Naimy, appeal from a judgment entered by the Lucas County Court of Common Pleas awarding appellee, JOGA Holdings Corp. ("JOGA"), $68,314.68 in damages against appellants for breach of a lease contract. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case**

{¶ 2} This case arises out of a commercial lease agreement that was entered into between the tenant, TT419, and landlord, JOGA, on January 28, 2021. On September 7, 2021, TT419 filed a complaint against JOGA, asserting claims for breach of contract, conversion, fraud/fraudulent inducement, misrepresentation, negligent misrepresentation, detrimental reliance, unjust enrichment, promissory estoppel, and breach of implied covenant of good faith and fair dealing. Upon a motion filed by JOGA, the trial court dismissed all but TT419's claim for breach of contract.

{¶ 3} Joga filed a counterclaim against TT419 and its owner, Joseph Naimy, based upon Naimy's personal guaranty of the lease agreement. JOGA's counterclaim asserted claims for breach of contract and fraudulent misrepresentation. In response to JOGA's counterclaim, appellants asserted as an affirmative defense that JOGA had failed to mitigate its damages.

{¶ 4} On February 9, 2023, JOGA filed a motion for summary judgment. Appellants opposed the motion. On March 26, 2025, the trial court journalized an opinion and order granting summary judgment in favor of JOGA on JOGA's counterclaim for breach of contract, and against TT419 on its remaining claim.

{¶ 5} A damages hearing was held on May 8, 2025. Testimony was presented by Gabrielle Mancy, an owner of JOGA, and Naimy. Mancy offered testimony regarding JOGA's damages and JOGA's efforts to re-let the subject property after TT419 and Naimy breached the lease and the personal guaranty agreements. In a judgment entry journalized on May 21, 2025, the trial court made a finding that JOGA's efforts in

2.

reletting the property were reasonable and, further, awarded JOGA $68,314.68 in total damages against appellants.

{¶ 6} Appellants timely filed an appeal, challenging only the portion of the award that represented 21 months of lost rent, i.e., $53,286.50. Appellants base their appeal on a claim that JOGA's efforts to re-let the premises were not reasonable and, thus, JOGA failed in its duty to mitigate its damages.

**Statement of the Facts**

{¶ 7} JOGA is the owner of commercial property located at 3121 Bancroft Street, Toledo, Ohio. In April 2019, JOGA hired Miller Diversified Realty ("Miller Diversified") to market a 2,100 square foot portion of the Bancroft Street property for rent. This 2,100 square foot portion (the Property) constituted approximately 24 percent of the larger Bancroft street space. In or around December 2020, Miller Diversified notified the owners of JOGA of TT419's interest in renting the Property to operate a retail clothing and footwear store.

{¶ 8} On January 28, 2021, JOGA and TT419 executed a lease agreement for the Property for a term of 60 months commencing on March 1, 2021, and terminating on February 28, 2026. On the same day the lease agreement was executed, Naimy executed an Unconditional Lease Guaranty, wherein he agreed to be a primary obligor of all liabilities, obligations and duties under the lease. Pursuant to the terms of the lease, the monthly rental amount was $2,537.50. TT419 was also required to pay a security deposit

3.

in the amount of $2,537.50, equal to one month's rent. TT419 paid both the agreed-upon security deposit and the first month's rent.

{¶ 9} Under the lease, JOGA was to prepare the Property with certain improvements -- so-called "white box" improvements -- provided that the cost of improvements did not exceed the improvement allowance of $135,000.00. TT419 was responsible for the cost of any improvements it directed that exceeded the improvement allowance of $135,000.00 as well as any other improvements that it installed outside of the "white box" improvements.

{¶ 10} JOGA contracted with ARK Restoration and Construction (the "contractor") to construct the "white box" buildout of the leased premises. Due to delays caused by Covid-19, the contractor was unable to begin work at the Property until after the lease commencement date of March 1, 2021. As a result of the contractor's delays, JOGA entered into an agreement with TT419 that TT419 could postpone its rental payments for a period of two months.

{¶ 11} After March 1, 2021, TT419 and Naimy contacted the contractor and requested that certain improvements be made to the Property. On or around July 19, 2021, the contractor notified TT419 and Naimy that the cost of the "tenant upfit" improvements that they had requested was $68,997.00.

{¶ 12} At or around the same time, the contractor notified JOGA that the "white box" improvements under the lease, including "white box" improvements directed by TT419 and Naimy, totaled $169,270.79. This amount exceeded the "white box" improvement allowance under the lease by $34,270.29. Joga notified TT419 and Naimy

4.

that the "white box" improvement costs exceeded the $135,000.00 improvement allowance and that TT419 and Naimy would need to deposit the excess funds required over and above the improvement allowance.

{¶ 13} On August 3, 2021, counsel for TT419 and Naimy sent correspondence to JOGA advising that TT419 and Naimy were terminating the lease effective immediately. By this time, JOGA had paid over $90,000.00 to the contractor for the buildout of the Property. In addition, even though TT419 breached the lease, JOGA was still required to pay a realtor fee of $7,612.50 to Miller Diversified for having brought TT419 to JOGA.

{¶ 14} Following the breach, JOGA placed a "For Rent" sign in the window of the Property and attempted to find a new renter by word of mouth. The "For Rent" sign measured 18 x 24 inches. Mancy testified that the "whole front" of the Property was glass, and that the glass was covered with brown construction paper, so the sign was "easily noticeable." She further testified that she and her husband were owners of several businesses in Toledo and had significant business connections related to renting out restaurant or other space. Mancy testified that she and her husband talked to many people among their business connections to see if anyone would be interested in renting the Property.

{¶ 15} At all times relevant herein, the space next to the Property was rented by JOGA to Barrington Property Group. Barrington Property Group owned Stubborn Brother Pizza restaurant, which operated at the Bancroft Street location. Mancy testified that in addition to talking to other business connections regarding the Property, she and her husband had walked around inside Stubborn Brother Pizza and told restaurant

5.

customers about the Property and the fact that JOGA was seeking a new renter. Mancy also testified that she spoke to realtors about the Property. According to Mancy, the Property was difficult to rent because it lacked parking and, prior to being renovated, had been a bit of an "eyesore."

{¶ 16} Mancy testified that she did not reactivate JOGA's listing agreement with broker Miller Diversified because Miller Diversified had taken over a year to find the last renter for the Property, and because JOGA was still required to pay a realtor fee of $7,612.50 even though the renter that Miller Diversified had found, namely TT419, ultimately breached the lease.

{¶ 17} Finding itself unable to find another tenant to rent the Property following TT419's breach, JOGA began discussions with Barrington Operating Group in early 2023. Barrington Operating Group and JOGA have the same owners. Because JOGA could not find another renter, Barrington Operating Group agreed to lease the Property as event space for Stubborn Brother Pizza. As noted by the trial court, JOGA "finally basically took over the space for the adjacent restaurant that they owned to mitigate the damages from continuing." The trial court recognized that "instead of owing sixty-two (62) months of rent, it went down to twenty-one (21) months."

{¶ 18} Because JOGA began discussions with Barrington Operating Group in early 2023, JOGA only sought rental payments from TT419 as damages from April 1, 2021 through December 31, 2022, which is a period of 21 months, representing a total of $53,287.50.

6.

{¶ 19} Mancy testified that she believed JOGA's efforts to re-let the Property were reasonable. Appellants did not present any testimony to challenge that statement.

## Assignments of Error

{¶ 20} On appeal, appellants assert the following assignments of error:

> I. The trial court in its Judgment entry of May 20, 2025, erred in finding that JOGA Holdings Corp.'s efforts in re-letting the commercial premises at issue were reasonable and therefore that JOGA Holdings Corp. met its burden of proving that it satisfied its duty to mitigate its damages as required by law.

> II. The trial court in its Judgment Entry of May 20, 2025, erred in not finding that TT419 and Naimy met their burden of proving that JOGA failed to satisfy its duty to mitigate in damages as required by law.

## Law and Analysis

{¶ 21} Because appellants' first and second assignments of error involve overlapping issues, they will be considered together in this analysis.

{¶ 22} "It is well-established that in both commercial and residential contexts, landlords generally owe a duty to mitigate damages caused by a breach of a lease agreement by attempting to re-rent the property." *Williams v. Chelsea Place Apartments*, 2025-Ohio-2417, ¶ 11 (6th Dist.), citing *Dennis v. Morgan*, 89 Ohio St.3d 417, 419 (2000). (Additional citation omitted.) "'Their efforts to do so must be reasonable, and the reasonableness should be determined at the trial level.'" *Id.* "If a landlord acts reasonably in attempting to secure a new tenant, the former tenant will be liable for rent up to the

7.

point of the landlord finding a new tenant, or the expiration of the lease, whichever is earlier." *Williams* at *id.*

{¶ 23} "'The term "reasonable efforts" does not require a landlord to make extraordinary efforts to find a new tenant or attempt the unreasonable or impractical.'" *Tincher v. Interstate Precision Tool Corp.*, 2002-Ohio-3311, *2 (2d Dist.), quoting *Hines v. Riley*, 129 Ohio App.3d 379, 383 (4th Dist. 1998). In addition, so long as the method employed is reasonable, the method a landlord uses to mitigate damages following a tenant's breach of a lease is not controlling. *Tincher* at *id.*

{¶ 24} "Because failure to use reasonable care to mitigate damages is an affirmative defense, the burden of proof is on the tenant." *Id.*, citing *Snell v. Salem Ave. Assoc.*, 111 Ohio App.3d 23, 38 (2d Dist. 1996). (Additional citation omitted.)

{¶ 25} Here, the trial court properly determined that appellants did not meet their burden to show that JOGA failed to mitigate its damages. The evidence showed that appellants placed an "easily noticeable" 18-x-24-inch "For Rent" sign in the window of the Property. In addition, the evidence showed that Mancy and her husband -- both owners of multiple Toledo businesses -- self-marketed the Property by word of mouth, utilizing their significant business connections and, also, talking to Stubborn Brother Pizza restaurant customers, and realtors.

{¶ 26} Mancy testified that the Property was difficult to rent, because it lacked parking and because prior to being renovated it was a bit of an "eyesore." That it took commercial realtor Miller Diversified over a year and a half to secure a renter for the same premises supports the contention that the premises were difficult to rent.

8.

{¶ 27} When JOGA was unable to find a renter by December 2022, it essentially took over the Property via Barrington Property Group for Stubborn Brother Pizza to mitigate the damages by keeping them from continuing.

{¶ 28} We find that JOGA's efforts to re-lease the Property and, thus, mitigate damages following TT419's breach were indeed reasonable, if not generous.

{¶ 29} Appellants, citing cases in which landlords utilized various other methods -- and various other combinations of methods -- to mitigate damages incurred as a result of a tenant's default, take issue with the measures that were taken by JOGA to mitigate the damages caused by TT419's breach. Appellants emphasize that JOGA did not hire a real estate broker to market the Property and did not advertise the Property in the local newspaper, on Facebook, or on any online application such as Zillow. Appellants also take issue with the timing of JOGA's takeover of the property, arguing that it should have done so sooner.

{¶ 30} On the other hand, appellants also admit that "no Ohio court has set forth what specific efforts are required of a commercial lessor in their duty to mitigate their damages by re-letting or re-leasing the subject property." As indicated above, "[t]he method the landlord actually uses to mitigate those damages is not controlling, so long as the method employed is reasonable." *Tincher v. Interstate Precision Tool Corp.*, 2002-Ohio-3311, at *2.

{¶ 31} Applying the law to the facts of the case, we find that appellants, in merely pointing out that JOGA used different methods to mitigate damages than were used by landlords in previous cases involving a breached lease agreement, have failed to show

9.

that JOGA failed to make reasonable efforts to mitigate the damages resulting from TT419's breach of the lease agreement.

{¶ 32} Because the trial court properly determined that JOGA "made a reasonable effort to re-rent the premises," and because appellants have failed to show that JOGA failed to make reasonable efforts to mitigate the damages resulting from TT419's breach of the lease agreement, appellants' first and second assignments of error are found not well-taken.

## Conclusion

{¶ 33} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, P.J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| | JUDGE |
| Charles E. Sulek, J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.